1 | RYAN C. WOOD (SB #232267)
ryan.wood@stoel.com
2 | STOEL RIVES LLP
500 Capitol Mall, Suite 1600
3 | Sacramento, CA  95814
Telephone:  916.447.0700
4 | Facsimile:  916.447.4781

5 | Attorney for Defendant
Sandy Phillips individually and dba Soley
6 | Performance Limited

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND COURTHOUSE

| KIRSTIN RIDGWAY, | Case No. 4:18-cv-07822-DMR |
|---|---|
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT |
| v. | |
| SANDY PHILLIPS, individually and doing business as SOLEY PERFORMANCE LIMITED, | Hearing:<br>Date:        February 26, 2019<br>Time:        11:00 a.m.<br>Courtroom 4 - 3rd Floor |
| Defendant. | Magistrate Judge Donna M. Ryu |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ 3
I. INTRODUCTION ............................................................................................................ 5
II. STATEMENT OF FACTS AND PROCEDURAL HISTORY ......................................... 5
   A. Background of Dispute .......................................................................................... 5
   B. Procedural History ................................................................................................. 8
III. ARGUMENT .................................................................................................................... 8
   A. This Court Lacks Personal Jurisdiction Over Defendant....................................... 8
      1. Specific Personal Jurisdiction ..................................................................... 9
      2. General Personal Jurisdiction.................................................................... 10
   B. In the Alternative, This Action Should be Dismissed Under the Doctrine of *Forum Non Conveniens* ...................................................................................... 11
   C. An Adequate Alternative Forum Exists .............................................................. 11
   D. Private and Public Interests Favor the United Kingdom..................................... 12
IV. CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*American Dredging Co. v. Miller*,
    510 U.S. 443 (1994)...........................................................................................................11

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985).............................................................................................................9

*Calder v. Jones*,
    465 U.S. 783 (1984).............................................................................................................9

*Ceramic Corp. of Amer. v. Inka Maritime Corp.*,
    1 F.3d 947 (9th Cir. 1993).................................................................................................11

*Creative Technology, Ltd. v. Aztech Syst. PTE Ltd.*,
    61 F.3d 696 (9th Cir. 1995).........................................................................................11, 12

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014).........................................................................................................10

*Hanson v. Denckla*,
    357 U.S. 235 (1958).............................................................................................................9

*Int'l Shoe Co. v. Wash.*,
    326 U.S. 310 (1945).............................................................................................................8

*Lockman Foundation v. Evangelical Alliance Mission*,
    930 F.2d 764 (9th Cir. 1991).............................................................................................12

*Omeluk v. Langsten Slip & Batbyggeri Al S*,
    52 F.3d 267 (9th Cir. 1995).................................................................................................9

*Panavision Int'l, L.P. v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998).............................................................................................8

*Pebble Beach Co. v. Caddy*,
    453 F.3d 1151 (9th Cir. 2006).........................................................................................9, 10

*Piper Aircraft v. Reyno*,
    454 U.S. 235 (1981).....................................................................................................11, 12

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004).....................................................................................8, 9, 10

*Sher v. Johnson*,
    911 F.2d 1357 (9th Cir. 1990).............................................................................................8

*Teras Cargo Transp. (Am.), LLC v. Cal Dive Int'l (Australia) Pty Ltd.*,
  No. 15-CV-03566-JSC, 2015 WL 6089276 (N.D. Cal. Oct. 16, 2015) ................................... 11

*Tuazon v. R. J. Reynolds Tobacco Co.*,
  433 F.3d 1163 (9th Cir. 2006) ................................................................................................ 9, 10

**Rules and Regulations**

Fed. R. Civ. P. 4(k)(1)(A) ............................................................................................................... 8

Fed. R. Civ. P. 12(b)(2) .................................................................................................................. 5

**Other Authorities**

1 William W. Schwartz, A. Wallace Tashima & James W. Wagstaffe, *Federal Civil Procedure Before Trial*, Venue §§ 4:835-4:845 ............................................................. 11

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

MPAS ISO MOTION TO DISMISS COMPLAINT    -4-    4:18-CV-07822-DMR

99675943.2 0080202-00000

## I. INTRODUCTION

Defendant Sandy Phillips ("Defendant") specially appears to move this Court for an order of dismissal pursuant to Federal Rules of Civil Procedure 12(b)(2) on the basis that this Court lacks personal jurisdiction over her in this matter. In the alternative, Defendant moves this Court for an order of dismissal under the doctrine of *forum non conveniens*, because the subject matter of this dispute, and all witnesses (except for the Plaintiff herself) and the physical evidence (e.g., the horses that are the subject of the transaction) are located in the United Kingdom, which would be the proper forum for the resolution of this dispute.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Background of Dispute

Defendant is named as the defendant individually and doing business as Soley Performance Limited ("Solely") in the above-entitled action. Phillips Decl. ¶ 2. Defendant is a citizen of the United Kingdom, and she resides and is domiciled in Saintbury, Worcestershire, United Kingdom. *Id.* ¶ 3. Defendant is an International dressage trainer, International Dressage and Eventing Judge, and was a Member of Ground Jury 2016 Olympics Games in Rio di Janeiro. Solely, a limited liability company of which she is a member and shareholder, was engaged in breeding and selling Sporthorses in the United Kingdom during all relevant times. *Id.* ¶ 5.

In Spring of 2016, Plaintiff Kirstin Ridgway ("Plaintiff") was interested in leasing two of the Solely mares located in the U.K., Lara and Riverdance, for breeding. The mares had produced many top quality offspring. The agreed upon arrangement was that Plaintiff would pay a fee to Soley in the amount of £12,000 for the right to do an embryo transfer from the mare Lara pursuant to which the mare would be inseminated and an embryo flushed to be carried by a surrogate mare, a fee to Soley in the amount of £8,000 for the right to breed the mare Riverdance who would carry the embryo to term, and would pay Solely for all costs of upkeep including board, farrier costs for hoof trims, and Solely's costs for the mares in connection with breeding, etc. Plaintiff was obligated to pay reproduction veterinary costs directly to the veterinarian, and the embryo transfer costs directly to the facility performing that service. In addition, Plaintiff was

supposed to pay the stud fees for the stallion semen directly to the stallion owners. Phillips Decl. ¶ 6.

Plaintiff agreed to these terms, and in June 2016, Plaintiff was emailed an invoice from Solely for £12,000 plus U.K. tax of 20% totaling £14,400 to obtain an embryo from the mare Lara, and an invoice from Solely for £8,000 plus the U.K. tax of 20% totaling £9,600. Thereafter, invoices from Solely were emailed to plaintiff for "keep charges," farrier fees, standard costs for transporting the mares to the veterinarians for breeding etc. Phillips Decl. ¶ 7.

The mares were kept in Saintbury, Worcestershire, United Kingdom, and all reproductive veterinary work was performed in the United Kingdom. Phillips Decl. ¶ 8. Defendant is informed and believes that the veterinarian and embryo transfer facility sent Plaintiff invoices which she fully paid directly. *Id.* ¶ 9. Plaintiff paid the initial breeding lease fees on both mares in June 2016 via wire transfer in pounds Sterling to Solely's bank account in the United Kingdom. However, because the mare Lara did not produce an embryo for transfer in 2016 and Plaintiff decided in November 2016 not to try for an embryo in 2017, the lease fee was refunded to her. However, she remained responsible for the cost of the mare's keep through November 2016 and was invoiced accordingly by Solely. The mare Riverdance was in foal and her keep and costs continued to be invoiced by Solely through the weaning of the colt in January 2018. *Id.* ¶ 10.

Despite Plaintiff's obligation to pay the stallion owners directly per the agreed upon arrangement, Plaintiff did not pay the bills which Solely then had to pay and invoice Plaintiff. Plaintiff also did not pay directly the registration and inspection fees for the foal born to Riverdance which Solely paid for and invoiced Plaintiff. Phillips Decl. ¶ 11. Plaintiff was sent monthly statements from Solely via email with all monies reconciled from June 2016. *Id.* ¶ 12.

From June 2016 through February 2018, Plaintiff did not pay Solely in full the invoiced amounts due on Plaintiff's account. At various times, the amount due exceeded £7,000. Despite Defendant's many contacts with Plaintiff via text, email, and phone, asking that she immediately bring her account up to date, she did not make payment in full after stating that she would. Phillips Decl. ¶ 13.

In the meantime, Defendant kept Plaintiff up to date on the colt, and his inspection results after being presented at the breed association in the U.K. Phillips Decl. ¶ 14. Not until October 2017 for the first time did Plaintiff tell Defendant in a text message that she had "serious issues with the bills" that Solely's bookkeeper had sent her, but did not specify the issues. She said she was missing a few statements, claimed she had not received a statement of accounts for the money that had been wired in June 2016, that she was forwarding the statements to her accountant, and that she wanted to get the matter settled as soon as possible. *Id*. ¶ 15.

By December 1, 2017, Defendant had received no further communications or payment of the outstanding balance. Defendant texted Plaintiff saying that the colt needed to be moved to another facility for weaning which required payment up front on the first of the month. Phillips Decl. ¶ 16. By January 4, 2018, Defendant had not received payment or heard back from Plaintiff. Solely's bookkeeper had sent a statement of the amounts due through December 2017. Defendant texted Plaintiff telling her that Defendant could not wait any longer for her to bring her account up to date, and that if the money were not wired by January 12, 2018, Solely would have to proceed with a collection agency. *Id*. ¶ 17.

Finally, on February 6, 2018, Defendant made a last attempt to make contact with Plaintiff. By text message Defendant advised Plaintiff that she either needed to pay in full immediately, or the foal would be sold, Solely would retain amount Plaintiff owed, and remit the remainder to Plaintiff. Defendant spoke to Plaintiff who said she would wire the money. The outstanding amount due at that time totaled approximately £6,109.64. On February 9, Plaintiff advised she had sent a wire transfer in £5,000 and texted a picture of wire transfer document. Phillips Decl. ¶ 18.

Because Solely had still not been paid in full after many attempts to collect the balance due, the colt was sold, and after paying off the balance owed to Solely, Solely remitted the £3,000 remainder to Plaintiff. Phillips Decl. ¶ 19.

As discussed above, Solely has had no contacts with or otherwise done business in the State of California. As an individual, Defendant conducts dressage clinics in the State of California where she gives riding lessons for two days, mostly in San Luis Obispo, and the Bay

Area, three to four times a year. In 2018, Defendant only did two of these clinics. From time to time, and not on any regular basis, Defendant serves as a judge or member of the ground jury at various FEI level three day eventing shows in the State of California. In 2018, Defendant judged only one such event in Paso Robles, California. Otherwise, Defendant has no other contacts with California. Phillips Decl. ¶ 20.

**B.     Procedural History**

Plaintiff filed this action on November 28, 2018 in the Sonoma County Superior Court, and she attempted service on Defendant Sandy Phillips only on December 1, 2018. The case was removed to this Court on December 31, 2018, and this motion is timely filed. Defendant is amenable to service of process and resolution of this dispute in the appropriate tribunal in the United Kingdom. Phillips Decl. ¶ 21.

### III.     ARGUMENT

**A.     This Court Lacks Personal Jurisdiction Over Defendant**

When no applicable federal statute authorizes personal jurisdiction, a district court applies the law of the state where the court sits. Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). California's long-arm statute has the same due process requirements as the federal long-arm statute. *Schwarzenegger*, 374 F.3d at 801. Under the Due Process Clause, nonresident defendants must have "minimum contacts" with the forum state such that the exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).

If a foreign defendant engages in "continuous and systematic general business contacts" that "approximate physical presence" in the forum state, general jurisdiction may be exercised. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world."

*Id., see also Tuazon v. R. J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006) (noting that the standard for establishing general jurisdiction is high, and requires that the defendant's contacts with the forum state "approximate physical presence").

### 1. Specific Personal Jurisdiction

Specific personal jurisdiction exists when (1) the non-resident defendant purposefully directs activities to the forum or purposefully avails itself of the privilege of conducting activities in the forum; (2) the claim arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Schwarzenegger*, 374 F.3d at 802. "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri Al S*, 52 F.3d 267, 270 (9th Cir. 1995). The plaintiff bears the burden of satisfying the first two prongs. *Schwarzenegger*, 374 F.3d at 802.

Purposeful availment and purposeful direction are distinct concepts. *Schwarzenegger*, 374 F.3d at 802. "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id*. (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). In return for availing itself of the benefits and protections of the forum state's laws, the defendant must "submit to the burdens of litigation in that forum." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

By contrast, a "showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Schwarzenegger*, 374 F.3d at 803. Due process allows "the exercise of personal jurisdiction over a defendant who 'purposefully direct[s]' his activities at residents of a forum, even in the 'absence of physical contacts' with the forum." *Id.* (quoting *Burger King*, 471 U.S. at 476).

To evaluate purposeful direction, courts in the Ninth Circuit apply the three-part test from *Calder v. Jones*, 465 U.S. 783 (1984). *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006) (applying the *Calder* test). To satisfy the *Calder* test, the defendant "must have

(1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Pebble Beach*, 453 F.3d at 1156.

The Defendant acted intentionally when she entered into a transaction on behalf of her company with Plaintiff to attempt the breeding of two mares. However, under the second prong ("expressly aimed at the forum state"), there are no facts that would support Defendant aiming her activities at California. At all times, the horses were to be breed and cared for in the United Kingdom. For Defendant's purposes, all work relevant to the transaction was to be performed in the United Kingdom, and the horses were to remain there until such a time that Plaintiff made other arrangements.

Because Defendant did not purposefully direct her activities to California or purposefully avail herself of the privilege of conducting business regarding horse breeding in California (*Schwarzenegger*, 374 F.3d at 802), and in fact the breeding business was conducted exclusively under the limited liability company Solely Performance Limited which is not a defendant to this action, this Court lacks personal jurisdiction over Defendant.

2. <u>General Personal Jurisdiction</u>

If a foreign defendant engages in "continuous and systematic general business contacts" that "approximate physical presence" in the forum state, general jurisdiction may be exercised. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Id. See also Tuazon v. R. J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006) (noting that the standard for establishing general jurisdiction is high, and requires that the defendant's contacts with the forum state "approximate physical presence").

General personal jurisdiction exists when a person's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). Nothing could be further from the truth for Defendant. She rarely visits California, and when she does it is for very short visits to conduct clinics and to

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

MPAS ISO MOTION TO DISMISS COMPLAINT

-10-

4:18-CV-07822-DMR

99675943.2 0080202-00000

judge horse competitions. Moreover, the entire transaction that is the subject of this case was between Plaintiff and Defendant's Limited Liability Company, Solely. Solely does not ever transact business in California, and at all times relevant, Solely's work for Plaintiff was done with horses in the United Kingdom. Since that activity is insufficient to establish specific personal jurisdiction, it falls well short of establishing that Defendant is "essentially at home" in California.[1] *See Teras Cargo Transp. (Am.), LLC v. Cal Dive Int'l (Australia) Pty Ltd.*, No. 15-CV-03566-JSC, 2015 WL 6089276, at *7 (N.D. Cal. Oct. 16, 2015) ("the threshold level of contacts required for general jurisdiction is even higher than is required for specific jurisdiction").

B.  **In the Alternative, This Action Should be Dismissed Under the Doctrine of *Forum Non Conveniens***

For many of the same reasons articulated above, in the event this Court finds personal jurisdiction over Defendant, it should still dismiss this action against her based on the common law doctrine of *forum non conveniens*. This doctrine applies when the defendant is a foreign citizen. Under this doctrine, courts have broad discretion to decline jurisdiction in favor of a more convenient forum outside the United States. *See generally,* 1 William W. Schwartz, A. Wallace Tashima & James W. Wagstaffe, *Federal Civil Procedure Before Trial,* Venue §§ 4:835-4:845; *American Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994).

A party moving to dismiss on grounds of *forum non conveniens* must show: (1) the existence of an adequate alternative forum; and (2) that the balance of private and public interest factors weighs in favor of dismissal. *Piper Aircraft v. Reyno*, 454 U.S. 235, 238 (1981); *Creative Technology, Ltd. v. Aztech Syst. PTE Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995). Each of these elements is readily established in this case.

C.  **An Adequate Alternative Forum Exists**

The threshold inquiry is whether there is an adequate alternative forum available for adjudication. *Ceramic Corp. of Amer. v. Inka Maritime Corp.,* 1 F.3d 947, 949 (9th Cir. 1993). The requirement of an adequate alternative forum is usually satisfied if the defendant is

---

[1] Defendant submits that Solely, not Sandy Phillips is the proper defendant to this action, and was neither properly named nor served.

amenable to service of process in the other jurisdiction. *Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir. 1991). A proposed forum is deemed unavailable only if its law effectively denies the plaintiff any remedy whatsoever. The fact that substantive law in the alternate forum is less favorable is irrelevant unless the remedy provided is "so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper,* 454 U.S. at 254; *see also Lockman,* 930 F.2d at 769 (possible unavailability of statutory claims in Japanese court did not make Japan an inadequate forum because plaintiff could bring other causes of action). Less favorable procedural law also does not make a forum inadequate. *Id.* at 768 (Japan was adequate forum despite different discovery procedures).

Here, Defendant resides and is domiciled in the United Kingdom. Unquestionably, there are courts of competent jurisdiction that can address the dispute alleged by Plaintiff, and to be clear, Defendant is amendable to service of process and resolution of the instant dispute in the U.K. court system. Phillips Decl. ¶ 21.

### D. Private and Public Interests Favor the United Kingdom

Most important in determining whether to grant a *forum non conveniens* motion are private interest factors, which fall into three categories: (1) relative ease of access to sources of proof; (2) availability of witnesses; and (3) all other practical factors favoring an expeditious and inexpensive trial. *Lockman,* 930 F.2d at 769- 770; *Creative Tech.,* 61 F.3d at 703. Where, as here, the majority of witnesses and documents are located in an alternate forum, the action should be dismissed. *Creative Tech.,* 61 F.3d. at 703 (dismissal upheld in copyright action where design and manufacture of both parties' computer software took place in Singapore, so that most of the witnesses and documents were located there).

Here, all of the relevant physical evidence and witnesses (except for the Plaintiff) are located in the United Kingdom. All breeding work and care for the subject horses was in the United Kingdom, and the veterinary and stud services were also provided in the United Kingdom. Virtually all witnesses and evidence would have to be brought to California in order to adequately try this case, which serves no private interest other than Plaintiff's. Otherwise, all of the

witnesses and evidence would be adversely impacted if this case proceeds in the current forum. The private interests are better served having the matter tried in the United Kingdom.

Similarly, the United Kingdom has an interest in resolving the dispute locally, because this dispute involves the breeding and care of horses located within its borders. It also involves the conduct of its subjects, the Defendant and other witnesses, who reside in the U.K.

### IV.  CONCLUSION

For the forgoing reasons, this Court should grant this motion and enter an order of dismissal for lack of personal jurisdiction over the Defendant. In the alternative, this Court should enter an order of dismissal on the basis that the United Kingdom is the proper forum to hear and resolve this dispute.

Dated: January 7, 2019                          STOEL RIVES LLP

                                                By: /s/ Ryan C. Wood
                                                    Ryan C. Wood
                                                    Attorney for Defendant
                                                    Sandy Phillips