RYAN C. WOOD (SB #232267)
ryan.wood@stoel.com
SUNNY S. SARKIS (SB #258073)
sunny.sarkis@stoel.com
STOEL RIVES LLP
500 Capitol Mall, Suite 1600
Sacramento, CA 95814
Telephone: 916.447.0700
Facsimile: 916.447.4781

Attorneys for Defendant
Sandy Phillips

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KIRSTIN RIDGWAY,

Plaintiff,

v.

SANDY PHILLIPS, an individual; SOLEY PERFORMANCE LIMITED, a private limited liability company incorporated in England,

Defendants.

Case No. 4:18-cv-07822-HSG

DEFENDANT SANDY PHILLIPS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

Hearing
Date: December 19, 2019
Time: 2:00 p.m.
Courtroom 2 – 4th Floor
Judge Haywood S. Gilliam, Jr.

TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ 3

NOTICE OF MOTION AND MOTION ........ 6

MEMORANDUM OF POINTS AND AUTHORITIES ........ 7

I. INTRODUCTION ........ 7

II. BACKGROUND FACTS ........ 7

III. RELEVANT PROCEDURAL HISTORY ........ 10

IV. STANDARD OF REVIEW ........ 11

V. LEGAL ARGUMENT ........ 12

A. The FAC Fails to Allege Facts to Show that Defendant Soley Performance Limited is the Alter Ego of Sandy Phillips. ........ 12

B. Plaintiff Fails to State a Claim for Breach of Contract. ........ 14

C. Plaintiff Fails to Plead a Claim for Fraud ........ 15

1. Plaintiff Fails to Plead Fraud in Accordance with Heightened Pleading Standard of Federal Rule 9(b). ........ 15

2. The Economic Loss Doctrine Bars Plaintiff's Claim for Fraud. ........ 15

D. Plaintiff Fails to Allege a Claim for an Accounting. ........ 17

1. Plaintiff Fails to Plead the Relationship Required to Support an Accounting Claim. ........ 17

2. Plaintiff's Claim for Accounting Fails Because It Is a Remedy. ........ 17

E. Plaintiff Fails to State a Claim for Unjust Enrichment. ........ 18

VI. CONCLUSION ........ 18

TABLE OF AUTHORITIES

**Cases**

*Aas v. Superior Court,*
24 Cal. 4th 627 (2000) .... 16

*Almutarreb v. Bank of N.Y. Trust Co., N.A.,*
Case No. C-12-3061 EMC, 2012 U.S. Dist. LEXIS 137202 (N.D. Cal. Sept. 24, 2012) .... 17

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
7 Cal. 4th 503 (Cal. 1994) .... 16

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .... 11

*Assoc. Vendors, Inc. v. Oakland Meat Co., Inc.*,
210 Cal. App. 2d 825 (1962) .... 13

*Batt v. City & Cty. of San Francisco,*
155 Cal. App. 4th 65 (2007) .... 17

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 554 (2007) .... 11

*Brown v. Starbucks Corp.*,
No. 18cv2286 JM (WVG), 2019 WL 996399 (S.D. Cal. Mar. 1, 2019) .... 15

*Carlson v. Clapper,*
No.18-cv-07195-VKD, 2019 WL 2211196 (N.D. Cal. May 22, 2019) .... 12, 13

*Dinosaur Devel., Inc. v. White,*
216 Cal. App. 3d 1310 (1989) .... 18

*Duggal v. G.E. Capital Comm'cns Servs.*,
81 Cal. App. 4th 81 (2000) .... 17

*Durell v. Sharp Healthcare,*
183 Cal. App. 4th 1350 (2010) .... 18

*eOnline Global, Inc. v. Google LLC,*
No. 5:16-cv-05822-EJD, 2019 WL 2121875 (N.D. Cal. May 15, 2019) .... 14

*Erlich v. Menezes,*
21 Cal. 4th 543 (1999) .... 16

*Gerritsen v. Warner Bros. Entm't Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015) .... 13

*Glue-Fold, Inc. v. Slautterback Corp.*,
82 Cal. App. 4th 1018 (2000)........................................ 17

*Graham-Sult v. Clainos,*
756 F.3d 724 (9th Cir. 2014)........................................ 18

*Hennessey's Tavern, Inc. v. Am. Air Filter Co.*,
204 Cal. App. 3d 1351 (1988)........................................ 12

*Johnston v. Irontown Hous. Co., Inc.*,
No. 13-CV-0523 W (BLM), 2014 WL 12531189 (S.D. Cal. Dec. 9, 2014).......... 13

*Jolley v. Chase Home Finance, LLC,*
213 Cal. App. 4th 872 (2013)........................................ 17

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)........................................ 11

*Leek v. Cooper,*
194 Cal. App. 4th 399 (2011)........................................ 13

*McKell v. Washington Mutual, Inc.*,
142 Cal. App. 4th 1457 (2006)........................................ 18

*Melchior v. New Line Productions, Inc.*,
106 Cal. App. 4th 779 (2003)........................................ 18

*Mesler v. Bragg Mgmt. Co.*,
39 Cal. 3d 290 (1985) ........................................ 13

*Miller v. Delta Air Lines,*
No. 2:18-cv-0218-ODW-(SK) 2018 WL 1750558 (C.D. Cal. Apr. 10, 2018)........ 12

*Myers Bldg. Indus., Ltd. v. Interface Tech., Inc.*,
13 Cal. App. 4th 949 (1993)........................................ 16

*Nanometrics, Inc. v. Optical Solutions, Inc.*,
No. 18-cv-00417-BLF, 2019 WL 1048253 (N.D. Cal. Mar. 5, 2019).............. 15

*Oasis W. Realty, LLC v. Goldman,*
51 Cal. 4th 811 (2011) ........................................ 14

*Pantoja v. Countrywide Home Loans, Inc.,*
640 F. Supp. 2d 1177 (N.D. Cal. 2009) ........................................ 17

*Ricon v. Recontrust Co.,*
Case No. 09CV937-IEG-JMA, 2009 U.S. Dist. LEXIS 67807 (S.D. Cal. Aug. 4, 2009) ........................................ 17

*Sandoval v. Ali,*
34 F. Supp. 3d 1031 (N.D. Cal. 2014) .......................................................................... 13, 14

*In re Schwarzkopf,*
626 F.3d 1032 (9th Cir. 2010)................................................................................................ 13

*Stewart v. Screen Gems-EMI Music, Inc.*,
81 F. Supp. 3d 938 (N.D. Cal. 2015) ...................................................................................... 13

*Teselle v. McLoughlin,*
173 Cal. App. 4th 156 (2009)................................................................................................. 17

*Turner v. City and Cty. of San Francisco,*
788 F.3d 1206 (9th Cir. 2015)................................................................................................ 11

*Vess v. Ciba-Geigy Corp. USA,*
317 F.3d 1097 (9th Cir. 2003)......................................................................................... 12, 15

*WeBoost Media S.R.L. v. LookSmart Ltd.*,
No. 13-cv-5304-SC, 2014 WL 2621465 (N.D. Cal. June 12, 2014)...................................... 16

**Statutes**

Cal. Civ. Proc. Code § 1624(a)(1) ........................................................................................ 14

**Rules**

Federal Rules of Civil Procedure 9(b) ......................................................................... 7, 11, 15

Federal Rules of Civil Procedure 12(b) ........................................................................................ 7

Federal Rules of Civil Procedure 12(b)(2)............................................................................... 10

Federal Rules of Civil Procedure 12(b)(6)......................................................................... 10, 11

NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on December 19, 2019, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Haywood S. Gilliam, Jr. in Courtroom 2 – 4th Floor of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California 94612, Defendant Sandy Phillips will and hereby does move this Court for an order dismissing Plaintiff Kirstin Ridgway's claims for (i) Breach of Contract; (ii) Fraud and Deceit; and (iii) Imposition of Constructive Trust and Accounting.

Defendant's Motion to Dismiss is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the aforementioned causes of action fail to state a claim upon which relief can be granted.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the FAC and its exhibits, any reply memorandum, the pleading and files in this action, and such other matters as may be presented at or before the hearing.

Dated: July 23, 2019

STOEL RIVES LLP

By: /s/ Sunny S. Sarkis
Ryan C. Wood
Sunny S. Sarkis
Attorneys for Defendant Sandy Phillips

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The First Amended Complaint ("FAC") filed by Plaintiff Kirstin Ridgway ("Plaintiff") fails to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b) for numerous reasons. First, Plaintiff's claim for Breach of Contract is barred by the Statute of Frauds. Likewise, Plaintiff fails to allege the first element for a claim for Breach of Contract: the existence of a contract. Second, Plaintiff fails to adequately plead alter ego liability as Plaintiff alleges no facts to support her contention that Soley Performance Limited ("Soley") is a sham corporation. Third, Plaintiff fails to plead fraud in accordance with Federal Rule of Civil Procedure 9(b), as she fails to plead specific facts giving rise to her claims for fraud including, but not limited to, fraudulent intent on behalf of Defendant Sandy Phillips ("Defendant"). In addition, Plaintiff's claim for fraud is barred by the economic loss doctrine. Plaintiff fails to plead claims for an Accounting and Unjust Enrichment because both claims are remedies. Accordingly, the Court should grant the Motion to Dismiss and dismiss the FAC without leave to amend.

### II. BACKGROUND FACTS

Defendant is a citizen of the United Kingdom, and she resides and is domiciled in Saintbury, Worcestershire, United Kingdom. Defendant is an International dressage trainer, International Dressage and Eventing Judge, and was a Member of Ground Jury 2016 Olympics Games in Rio di Janeiro. Soley, a limited liability company of which she is a member and shareholder, was engaged in breeding and selling Sporthorses in the United Kingdom during all relevant times.

In Spring of 2016, Plaintiff was interested in leasing two of the Soley mares located in the U.K., Lara and Riverdance, for breeding. The mares had produced many top quality offspring. The agreed upon arrangement was that Plaintiff would pay a fee to Soley in the amount of £12,000 for the right to do an embryo transfer from the mare Lara pursuant to which the mare would be inseminated and an embryo flushed to be carried by a surrogate mare, a fee to Soley in the amount of £8,000 for the right to breed the mare Riverdance who would carry the embryo to

term, and would pay Soley for all costs of upkeep including board, farrier costs for hoof trims, and Soley's costs for the mares in connection with breeding, etc. Plaintiff was obligated to pay reproduction veterinary costs directly to the veterinarian, and the embryo transfer costs directly to the facility performing that service. In addition, Plaintiff was supposed to pay the stud fees for the stallion semen directly to the stallion owners.

Plaintiff agreed to these terms, and in June 2016, Plaintiff was emailed an invoice from Soley for £12,000 plus U.K. tax of 20% totaling £14,400 to obtain an embryo from the mare Lara, and an invoice from Soley for £8,000 plus the U.K. tax of 20% totaling £9,600. Thereafter, invoices from Soley were emailed to Plaintiff for "keep charges," farrier fees, standard costs for transporting the mares to the veterinarians for breeding etc.

The mares were kept in Saintbury, Worcestershire, United Kingdom, and all reproductive veterinary work was performed in the United Kingdom. Defendant is informed and believes that the veterinarian and embryo transfer facility sent Plaintiff invoices which she fully paid directly. Plaintiff paid the initial breeding lease fees on both mares in June 2016 via wire transfer in pounds Sterling to Soley's bank account in the United Kingdom. However, because the mare Lara did not produce an embryo for transfer in 2016 and Plaintiff decided in November 2016 not to try for an embryo in 2017, the lease fee was refunded to her. However, she remained responsible for the cost of the mare's keep through November 2016 and was invoiced accordingly by Soley. The mare Riverdance was in foal and her keep and costs continued to be invoiced by Soley through the weaning of the colt in January 2018.

Despite Plaintiff's obligation to pay the stallion owners directly per the agreed upon arrangement, Plaintiff did not pay the bills which Soley then had to pay and invoice Plaintiff. Plaintiff also did not pay directly the registration and inspection fees for the foal born to Riverdance which Soley paid for and invoiced Plaintiff. Plaintiff was sent monthly statements from Soley via email with all monies reconciled from June 2016.

From June 2016 through February 2018, Plaintiff did not pay Soley in full the invoiced amounts due on Plaintiff's account. At various times, the amount due exceeded £7,000. Despite

Defendant's many contacts with Plaintiff via text, email, and phone, asking that she immediately bring her account up to date, she did not make payment in full after stating that she would.

In the meantime, Defendant kept Plaintiff up to date on the colt, and his inspection results after being presented at the breed association in the U.K. Not until October 2017 for the first time did Plaintiff tell Defendant in a text message that she had "serious issues with the bills" that bookkeeper had sent her, but did not specify the issues. She said she was missing a few statements, claimed she had not received a statement of accounts for the money that had been wired in June 2016, that she was forwarding the statements to her accountant, and that she wanted to get the matter settled as soon as possible.

By December 1, 2017, Defendant had received no further communications or payment of the outstanding balance. Defendant texted Plaintiff saying that the colt needed to be moved to another facility for weaning which required payment up front on the first of the month. By January 4, 2018, Defendant had not received payment or heard back from Plaintiff. Soley's bookkeeper had sent a statement of the amounts due through December 2017. Defendant texted Plaintiff telling her that Defendant could not wait any longer for her to bring her account up to date, and that if the money were not wired by January 12, 2018, Soley would have to proceed with a collection agency.

Finally, on February 6, 2018, Defendant made a last attempt to make contact with Plaintiff. By text message Defendant advised Plaintiff that she either needed to pay in full immediately, or the foal would be sold, Soley would retain the amount Plaintiff owed, and remit the remainder to Plaintiff. Defendant spoke to Plaintiff who said she would wire the money. The outstanding amount due at that time totaled approximately £6,109.64. On February 9, 2018, Plaintiff advised she had sent a wire transfer in £5,000 and texted a picture of a wire transfer document.

Because Soley had still not been paid in full after many attempts to collect the balance due, the colt was sold, and after paying off the balance owed to Soley, Soley remitted the £3,000 remainder to Plaintiff.

As discussed above, Soley has had no contacts with or otherwise done business in the State of California. As an individual, Defendant conducts dressage clinics in the State of California where she gives riding lessons for two days, mostly in San Luis Obispo, and the Bay Area, three to four times a year. In 2018, Defendant only did two of these clinics. From time to time, and not on any regular basis, Defendant serves as a judge or member of the ground jury at various FEI level three day eventing shows in the State of California. In 2018, Defendant judged only one such event in Paso Robles, California. Otherwise, Defendant has no other contacts with California.

## III. RELEVANT PROCEDURAL HISTORY

On November 28, 2018, Plaintiff filed this meritless lawsuit against Defendant in Sonoma County Superior Court, falsely alleging that Defendant misrepresented the costs of maintenance even though Defendant continuously communicated the costs to Plaintiff via monthly statements which Plaintiff did not contest.

Defendant timely filed a Notice of Removal on December 31, 2018. Dkt. No. 1. On January 7, 2019, Defendant timely filed a Motion to Dismiss the case pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2). Dkt. No. 7.

Plaintiff admits she was served with the Notice of Removal via overnight delivery, yet Plaintiff did absolutely nothing to timely respond or otherwise prosecute this case for a full 50 days. Dkt. No. 14 at 2. Even after Defendant filed a Notice of Non-Opposition to her Motion to Dismiss on January 30, 2019, Plaintiff still sat on her hands. Dkt. No. 12. It was only after this Court, on February 14, 2019, issued the Order to Show Cause that Plaintiff took any action. Dkt. No. 13. Even then, she waited six days after the Court issued the Order to Show Cause, and a full 44 days after Defendant filed her Motion to Dismiss. See Dkt. No. 14. Notwithstanding the fact that Plaintiff had only 14 days to oppose the Motion to Dismiss pursuant to Northern District Civil Local Rule 7-3(a), she took triple that amount of time to respond to the Motion to Dismiss.

Defendant filed her Motion to Dismiss on January 7, 2019. Dkt. No. 7. Pursuant to Civil Local Rule 7-3(a), Plaintiff's response was due on or before January 21, 2019, as this Court noted in its Order to Show Cause Why Case Should Not Be Dismissed (the "Order to Show Cause").

Dkt. No. 13. Instead, Plaintiff filed her Opposition a full 30 days after it was due, on February 21, 2019.[1] Dkt. No. 15. Defendant filed her Reply on March 20, 2019. Dkt. No. 17.

On April 18, 2019, the Court issued an Order Denying the Motion to Dismiss for Lack of Personal Jurisdiction and Based on Forum Non Conveniens. Dkt. No. 26. On May 13, 2019, the Court issued a Scheduling Order, setting the deadline for filing amended pleadings for July 8, 2019. Dkt. No. 31. Defendant attempted to determine whether Plaintiff intended to file an Amended Complaint, but Plaintiff did not respond to Defendant's many calls and emails. Accordingly, on July 1, 2019, Defendant filed its Answer to the Complaint. Dkt. No. 32. On July 8, 2019, Plaintiff filed her FAC alleging the following causes of action: (i) Breach of Contract; (ii) Fraud and Deceit; and (iii) Imposition of Constructive Trust and Accounting. Dkt. No. 33. Plaintiff also requests punitive damages. *Id.* Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant moves to dismiss the FAC for failure to state a claim upon which relief may be granted.

## IV. STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts that, if accepted as true, demonstrate a plausible claim for relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556 (2007). A claim is plausible if the pleaded facts support the reasonable inference that the defendant is liable for the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A complaint must establish "more than a sheer possibility" of liability. *Turner v. City and Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015).

Moreover, when the plaintiff alleges conduct sounding in fraud, there is an even heavier burden. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Under Federal Rule of Civil Procedure 9(b), all circumstances constituting fraud must be alleged "with particularity."

---

[1] Plaintiff responded to the Court's Order to Show cause on January 20, 2019 (Dkt. No. 14) and filed her Opposition to the Motion to Dismiss on January 21, 2019 (Dkt. No. 15).

This means, at a minimum, a plaintiff must identify "the who, what, when, where, and how" of the misconduct charged, and include an explanation as to what is false or misleading about a statement, and why it is false. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); *Miller v. Delta Air Lines*, No. 2:18-cv-0218-ODW-(SK) 2018 WL 1750558, at *4 (C.D. Cal. Apr. 10, 2018) (dismissing fraud claim for failure to specify misrepresentation with particularity).

V. LEGAL ARGUMENT

A. The FAC Fails to Allege Facts to Show that Defendant Soley Performance Limited is the Alter Ego of Sandy Phillips.

Plaintiff alleges that Defendant Phillips is the sole member and shareholder of Soley. FAC ¶ 3. Plaintiff alleges that both named Defendants are responsible for the conduct alleged in the FAC, and, without providing any facts, alleges an agency relationship. FAC ¶ 5. Plaintiff then concludes, without providing any facts, that Soley "was and is a sham and shell entity and alter ego of Defendant Phillips, that was and is underfunded, inadequately capitalized, and did not and does not follow mandated corporate formalities and was formed … to perpetrate a fraud on Plaintiff and to circumvent liability for … fraudulent conduct. …" FAC ¶ 6. The allegations in the FAC are insufficient to contend that Sandy Phillips is personally liable under an alter ego theory.

> 'A claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, *e.g.*, breach of contract or to set aside a fraudulent conveyance, but rather, procedural, *i.e.*, to disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation where the corporate form is being used by the individuals to escape personal liability, sanction a fraud, or promote injustice.'

*Carlson v. Clapper*, No.18-cv-07195-VKD, 2019 WL 2211196, at *6 (N.D. Cal. May 22, 2019) (quoting *Hennessey's Tavern, Inc. v. Am. Air Filter Co*., 204 Cal. App. 3d 1351, 1358-59 (1988).)

> In applying the alter ego doctrine, the issue is not whether the corporation is the alter ego of its shareholders for all purposes or whether the corporation was organized for the purpose of defrauding the plaintiff, but rather whether justice and equity are best accomplished in a particular case, and fraud defeated, by disregarding the separate nature of the corporate form as to the claims in that case.

*Id.* (citing *Mesler v. Bragg Mgmt. Co*., 39 Cal. 3d 290, 300 (1985).).

> Alter ego liability is recognized 'where two conditions are met: [f]irst, where there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; and, second, where adherence to the fiction of the separate existence of the corporation would ... sanction a fraud or promote injustice.'

*Id*. (quoting *In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (internal quotation marks and citation omitted).).

> Factors suggesting an alter ego relationship include 'the use of the same office or business location; ... the use of a corporation as a mere shell, instrumentality, or conduit for a single venture or the business of an individual or another corporation ...; [and] [the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability....'

*Id.* (quoting *Assoc. Vendors, Inc. v. Oakland Meat Co., Inc*., 210 Cal. App. 2d 825, 838-40 (1962).) "Sole ownership of a company alone is not a sufficient basis for alter ego liability." *Id.* (citing *Johnston v. Irontown Hous. Co., Inc*., No. 13-CV-0523 W (BLM), 2014 WL 12531189, at *6 (S.D. Cal. Dec. 9, 2014) (quotation omitted); *Leek v. Cooper*, 194 Cal. App. 4th 399, 415 (2011) ("An allegation that a person owns all of the corporate stock and makes all of the management decisions is insufficient to cause the court to disregard the corporate entity.").).

Here, conclusory allegations of alter ego status are insufficient to state a claim for alter ego liability. *Gerritsen v. Warner Bros. Entm't Inc*., 112 F. Supp. 3d 1011, 1043 (C.D. Cal. 2015); *Stewart v. Screen Gems-EMI Music, Inc*., 81 F. Supp. 3d 938, 962-63 (N.D. Cal. 2015) (conclusory allegations based solely on information and belief are insufficient to state a claim for alter ego where the information and belief allegations merely mimic the language of factors that courts use to determine alter ego and do not supply any specific facts). The FAC alleges no specific facts to support any of Plaintiff's conclusory allegations that Soley is inadequately capitalized or underfunded, or that is does not follow mandated corporate formalities. FAC ¶ 6; *see also Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014) (plaintiff must allege specifically both of the elements of alter ego liability as well as facts supporting each). More importantly, the FAC fails to allege any facts to show that an inequitable result will follow if

Plaintiff is not permitted to pierce the corporate veil. *Id.* The FAC therefore fails to allege a viable theory of alter ego liability against Defendant Phillips.

B. Plaintiff Fails to State a Claim for Breach of Contract.

Plaintiff contends that on April 16, 2016, Plaintiff agreed to purchase two foals from Defendant which were to be the offspring of two mare horses named Riverdance and Lara. FAC ¶ 10. Plaintiff falsely contends she performed under the terms of the purported contract. *Id.* at ¶ 11. Plaintiff claims Defendant breached the contract by selling the foal to someone else despite the fact that Plaintiff allegedly paid for the foal. *Id.* at ¶ 12.

"The elements of a claim for breach of contract are: '(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff.'" *eOnline Global, Inc. v. Google LLC*, No. 5:16-cv-05822-EJD, 2019 WL 2121875, at *3 (N.D. Cal. May 15, 2019) (quoting *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).).

Plaintiff fails to plead the first element of her claim for Breach of Contract: existence of the contract. Here, Plaintiff alleges that Plaintiff and Defendant "entered into a partly written and partly oral agreement." Plaintiff fails to allege sufficient facts to sustain her claim. Plaintiff fails to specify which part of the agreement is oral, and which part of the agreement is written. Unsurprisingly, Plaintiff fails to attach the purportedly written part of the agreement to the FAC. Because the breeding of a foal would necessarily take over one (1) year to perform, as Plaintiff admits in the FAC (¶¶ 9 and 12), the contract had to be in writing pursuant to the Statute of Frauds. Cal. Civ. Proc. Code § 1624(a)(1) ("The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent (1) An agreement that by its terms is not to be performed within a year from the making thereof."). Thus, any purported, partial "oral" agreement was invalid.

As to the written part of the purported contract, Plaintiff does not allege the basic elements of a contract: offer, acceptance, and consideration. Plaintiff does not allege what the precise offer was, including all relevant terms, whether the offer was formally accepted, and the agreed-upon consideration for the contract. Accordingly, Plaintiff fails to state a claim for breach of contract.

C. Plaintiff Fails to Plead a Claim for Fraud

1. Plaintiff Fails to Plead Fraud in Accordance with Heightened Pleading Standard of Federal Rule 9(b).

In the FAC, Plaintiff contends that from April 2016 through February 2018 Defendant made materially false and misleading statements, including that (i) Plaintiff would receive two (2) foals; (ii) that Plaintiff would receive the one live foal Des Artiste; and (iii) Plaintiff would receive a "Live Foal Guarantee," meaning that Defendant would continue to breed both mares until foals were born, weaned, and then transported to Plaintiff. FAC ¶ 15.

But under Federal Rule of Civil Procedure 9(b), a plaintiff must plead fraud with particularity. "'Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.'" *Brown v. Starbucks Corp*., No. 18cv2286 JM (WVG), 2019 WL 996399, at *2 (S.D. Cal. Mar. 1, 2019) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003).). "A claim for fraud requires (a) misrepresentation; (b) knowledge of falsity; (c) intent to defraud, *i.e.* to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Nanometrics, Inc. v. Optical Solutions, Inc*., No. 18-cv-00417-BLF, 2019 WL 1048253, at *6 (N.D. Cal. Mar. 5, 2019).

Plaintiff's conclusory allegations do not come close to satisfying the exacting standard of Federal Rule 9(b). Plaintiff fails to allege with particularity when misleading statements were made, why the statements were misleading, when, precisely, the statements were made, or how they were made. Likewise, Plaintiff fails to plead with particularity that Defendant acted with the intent to defraud Plaintiff, likely because Plaintiff never intended to defraud Plaintiff. Plaintiff does not allege any facts whatsoever suggesting that Plaintiff had the requisite scienter necessary to support a claim for fraud. Instead, Plaintiff merely concludes that Defendant acted intentionally. Accordingly, because Plaintiff fails to plead fraud with particularity, the Court should grant Defendant's Motion to Dismiss Plaintiff's claim for fraud.

2. The Economic Loss Doctrine Bars Plaintiff's Claim for Fraud.

Plaintiff fails to state a claim for fraud because a plaintiff in a breach of contract action cannot recover tort damages for alleged breaches of the same duties imposed by contract. In

general, the 'economic loss rule' precludes a plaintiff from suing a defendant for a tortious breach of contract without alleging that the defendant has violated a duty separate from the breach of contract. *See e.g., Erlich v. Menezes*, 21 Cal. 4th 543, 551 (1999) ("conduct amounting to a breach of contract becomes tortious only when it also violates a duty independent of the contract arising from principles of tort law"); *see also Aas v. Superior Court*, 24 Cal. 4th 627, 643 (2000) ("A person may not ordinarily recover in tort for the breach of duties that merely restate contractual obligations"); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515, (Cal. 1994) ("Conduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law").

As to the fraud claim, once again, the purpose of the 'economic loss rule' is "to prevent every breach of a contract from giving rise to tort liability and the threat of punitive damages: 'Quite simply, the economic loss rule prevents the law of contract and the law of tort from dissolving one into the other.'" *WeBoost Media S.R.L. v. LookSmart Ltd.*, No. 13-cv-5304-SC, 2014 WL 2621465, at *4, *6 (N.D. Cal. June 12, 2014). "Where contract actions enforce the intentions of the parties to the agreement, tort actions are primarily concerned with the vindication of social policy." *Id.* at *6.

Plaintiff's fraud claim is barred by the economic loss doctrine. Plaintiff's fraud claim, as pled, is based on Plaintiff's contention that she paid for two foals pursuant to a partially oral and partially written contract. In other words, this is exactly what Plaintiff pled as to her breach of contract claims. "In the absence of an independent tort, punitive damages may not be awarded for breach of contract 'even where the defendant's conduct in breach the contract was willful, fraudulent, or malicious.'" *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 516 (1994) (quoting *Myers Bldg. Indus., Ltd. v. Interface Tech., Inc.*, 13 Cal. App. 4th 949, 959 (1993).) Here, because Plaintiff fails to plead an independent tort, the economic loss doctrine bars Plaintiff's fraud claim and concomitant prayer for punitive damages.

D. Plaintiff Fails to Allege a Claim for an Accounting.

1. Plaintiff Fails to Plead the Relationship Required to Support an Accounting Claim.

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." *Almutarreb v. Bank of N.Y. Trust Co., N.A.*, Case No. C-12-3061 EMC, 2012 U.S. Dist. LEXIS 137202, *16-17 (N.D. Cal. Sept. 24, 2012) (citing *Ricon v. Recontrust Co.*, Case No. 09CV937-IEG-JMA, 2009 U.S. Dist. LEXIS 67807, *7 (S.D. Cal. Aug. 4, 2009) and *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009)). The claim also requires a special relationship between the parties, such as a fiduciary relationship. *See Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1197 (N.D. Cal. 2009). An accounting claim, is an equitable remedy, is "dependent upon a substantive basis for liability," and has no "separate viability." *Glue-Fold, Inc. v. Slautterback Corp*., 82 Cal. App. 4th 1018, 1023 n.3 (2000).

Here, Plaintiff does not allege that she has a fiduciary relationship with Plaintiff, or any relationship that requires an accounting. *Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 910 (2013) (providing action for accounting appropriate where fiduciary relationship exists or where no fiduciary relationship exists, accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable). Because Plaintiff requests a sum certain; namely, $57,524.52, the remedy of an accounting is not available to Plaintiff.

2. Plaintiff's Claim for Accounting Fails Because It Is a Remedy.

A cause of action for an accounting is inappropriate here, since an accounting is a remedy and cannot form the basis of a claim. *Batt v. City & Cty. of San Francisco*, 155 Cal. App. 4th 65, 82 (2007) (an accounting "is not an independent cause of action but merely a type of remedy"). "The right to an accounting is derivative and depends on the validity of a plaintiff's underlying claims." *Duggal v. G.E. Capital Comm'cns Servs*., 81 Cal. App. 4th 81, 95 (2000). Here, Plaintiff does not allege a cause of action where the remedy of an accounting would be appropriate.

E. Plaintiff Fails to State a Claim for Unjust Enrichment.

Plaintiff's claim for Unjust Enrichment fails because it does not constitute a valid cause of action in California. *See Graham-Sult v. Clainos*, 756 F.3d 724, 750 (9th Cir. 2014) (citing *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010).). "[T]here is no cause of action in California for unjust enrichment." *Melchior v. New Line Productions, Inc.*, 106 Cal. App. 4th 779, 793 (2003); *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1490 (2006). Unjust enrichment is synonymous with restitution. *Dinosaur Devel., Inc. v. White*, 216 Cal. App. 3d 1310, 1314 (1989). Accordingly, Plaintiff fails to plead a claim for unjust enrichment.

VI. CONCLUSION

For all of the foregoing reasons, Defendant Sandy Phillips respectfully requests that the Court grant its Motion to Dismiss and dismiss Plaintiff's First Amended Complaint with prejudice.

Dated: July 23, 2019

STOEL RIVES LLP

By: /s/ Sunny S. Sarkis
Ryan C. Wood
Sunny S. Sarkis
Attorneys for Defendant Sandy Phillips