1  RYAN C. WOOD (SB #232267)
   ryan.wood@stoel.com
2  SUNNY S. SARKIS (SB #258073)
   sunny.sarkis@stoel.com
3  STOEL RIVES LLP
   500 Capitol Mall, Suite 1600
4  Sacramento, CA  95814
   Telephone:  916.447.0700
5  Facsimile:  916.447.4781

6  Attorneys for Defendant
   Sandy Phillips
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10 KIRSTIN RIDGWAY,                    | Case No. 4:18-cv-07822-HSG

11              Plaintiff,             | SANDY PHILLIPS' NOTICE OF
                                       | MOTION AND MOTION FOR
12      v.                             | SUMMARY JUDGMENT;
                                       | MEMORANDUM OF POINTS AND
13 SANDY PHILLIPS, an individual;      | AUTHORITIES
   SOLEY PERFORMANCE LIMITED, a private|
14 limited liability company incorporated in |
   England,                           | Hearing
15                                     | Date:      January 30, 2020
                Defendants.           | Time:      2:00 p.m.
16                                     | Courtroom 2 – 4th Floor
                                       | Judge Haywood S. Gilliam, Jr.
17

18

19

20

21

22

23

24

25

26

27

28

Stoel Rives LLP
Attorneys At Law
Sacramento

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS                    -1-                    4:18-CV-07822-HSG

104733328.1 0069202-00001

1

## **TABLE OF CONTENTS**

2

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT .................................... 4

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 5

I.      INTRODUCTION ..................................................................................................... 5

II.     STATEMENT OF FACTS ........................................................................................ 5

    A.      Background of Sandy Phillips and the Mare "Lara" ........................................ 5

    B.      Plaintiff Kirsten Ridgway and the Contract Terms ......................................... 7

    C.      Service of Process and Procedural Posture ................................................... 16

III.    STANDARD ON SUMMARY JUDGMENT ............................................................ 17

IV.     ARGUMENT .......................................................................................................... 18

    A.      Plaintiff's First Claim For Breach Of Contract Fails As A Matter Of Law, Because Plaintiff Was In Privity Of Contract With Soley, Not Sandy Phillips. ..................................... 18

    B.      There Is No Dispute of Fact Regarding Plaintiff's Failure to Pay for The Services That She Contracted For With Soley, Excusing Soley's Performance For Any Remaining Obligations Thereunder. ........................................ 19

    C.      Plaintiff's First Claim For Breach Of Contract Fails As A Matter Of Law Because Plaintiff's Alleged Contract Terms Are Not Supported By The Evidence. .............................. 20

    D.      Plaintiff's First Claim For Breach Of Contract Fails As A Matter Of Law Because It Seeks Complete Rescission And Restitution, An Extraordinary Remedy Not Supported By These Facts. .............................................. 21

        1.      The Gravity Of The Alleged Breach Is Not Sufficient To Justify Restitution Given Plaintiff's Own Conduct. ....................................... 21

    E.      Plaintiff's Second Claim For Fraud Fails Because Plaintiff Cannot Raise A Triable Issue As To The Essential Elements, Including Scienter, the Intent to Defraud, Justifiable Reliance, and Resulting Damage. ............................ 22

    F.      Plaintiff's Alter Ego Allegations Fail As A Matter Of Law Because They Lack Any Factual Basis Whatsoever. ........................................ 23

    G.      Plaintiff's Third Claim Lacks Factual Support ............................................. 24

V.      CONCLUSION ...................................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**

*Adickes v. S.H. Kress & Co.,*
    398 U.S. 144 (1970) ........................................................................................ 18

*Alder v. Drudis,*
    30 Cal. 2d 372 (1947) ..................................................................................... 22

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ........................................................................................ 18

*Bowman v. Santa Clara,*
    153 Cal. App. 2d 707 (1957) ........................................................................... 21

*Brown v. Grimes,*
    192 Cal. App. 4th 265 (2011) .......................................................................... 20

*Carlesimo v. Schwebel,*
    87 Cal. App. 2d 482 (1948) ........................................................................ 18, 19

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS

-2-

4:18-CV-07822-HSG

104733328.1 0069202-00001

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ................................................................................................ 18

*Century Metal Recycling, Pvt. Ltd. v. Dacon Logistics, LLC,*
   No. 3:13–cv–00093 (CSH), 2013 WL 5929816 (D. Conn. Nov. 4, 2013) ............................ 6

*Clark v. County of Tulare,*
   755 F. Supp. 2d 1075 .......................................................................................... 24

*Cochran v. Ellsworth,*
   126 Cal. App. 2d 429 (1954) ............................................................................... 20

*Condos v. Condos,*
   No. CV 04-07365 DT, 2006 WL 8431432 (C.D. Cal. Feb. 9, 2006) .................................... 25

*Consolidated World Investments, Inc., v. Lido Preferred Ltd.,*
   9 Cal. App. 4th 373 (1992) ............................................................................ 19, 20

*Cummings v. Worktap, Inc.,*
   Case No: C 17-6246 ........................................................................................ 23, 24

*Ehret v. Ichioka,*
   247 Cal. App. 2d 637 (1967) ............................................................................... 24

*Fed. Deposit Ins. Corp. v. Air Fla. Sys., Inc.,*
   822 F.3d 833 (1987) ........................................................................................... 22

*Founding Members of the Newport Beach Country Club v. Newport Beach*
   *Country Club, Inc.,*
   109 Cal. App. 4th 944 (2003) ............................................................................... 21

*G.W. Andersen Construction Co. v. Mars Sales,*
   164 Cal. App. 3d 326 (1985) ............................................................................... 18

*Hackenthal v. Nat'l Casualty Co.,*
   189 Cal. App. 3d 1102 (1987) ......................................................................... 22, 23

*Korea Supply Co. v. Lockheed Martin Corp.,*
   29 Cal. 4th 1134 (2003) ..................................................................................... 21

*Long v. Nationwide Legal File & Serve, Inc.,*
   2013 WL 5219053 (N.D. Cal. Sept. 17, 2013) .......................................................... 24

*MAG Aerospace Indus., LLC v. Precise Aerospace Mfg., Inc.,*
   No. 5:18-cv-01096-RGK-JC, 2019 WL 3306010 (C.D. Cal. July 23, 2019) ........................ 20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) .......................................................................................... 18

*Mid-Century Ins. Co. v. Gardner,*
   9 Cal. App. 4th 1205 (1992) ............................................................................... 24

*Rizzo v. Ins. Co. of State of Pa.,*
   969 F. Supp. 2d 1180 (C.D. Cal. 2013) ................................................................. 21

*Stone v. Farnell,*
   239 F.2d 750 (1956) .......................................................................................... 22

*Superior Gunite v. Ralph Mitzel, Inc.,*
   117 Cal. App. 4th 301 (2004) ............................................................................. 18

*Superior Motels, Inc. v. Rinn Motor Hotels, Inc.,*
   195 Cal. App. 3d 1032 (1987) ............................................................................ 20

*Tomaselli v. Transamerica Ins. Co.,*
   25 Cal. App. 4th 1269 (1994) ............................................................................. 24

*Wishnick v. Frye,*
   111 Cal. App. 2d 926 (1952) ............................................................................... 22

*Wyler v. Feuer,*
   85 Cal. App. 3d 392 (1978) ................................................................................ 22

**Statutes**
Cal. Civ. Code § 1689 ............................................................................................ 22
Cal. Civ. Code § 1689(b) ........................................................................................ 22
Cal. Civ. Code § 2224 ............................................................................................ 24

**Rules**
Fed. R. Civ. P. 56(a) .............................................................................................. 18

Stoel Rives LLP
ATTORNEYS AT LAW
SACRAMENTO

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS

-3-

4:18-CV-07822-HSG

104733328.1 0069202-00001

## NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT

PLEASE TAKE NOTICE that on January 30, 2020, at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Haywood S. Gilliam, Jr. in Courtroom 2 – 4th Floor of the United States District Court for the Northern District of California, located at 1301 Clay Street, Oakland, California 94612, Defendant Sandy Phillips ("Defendant") will and hereby does move this Court for summary judgment, or in the alternative, summary adjudication, in her favor.

Defendant's Motion for Summary Judgment is made pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56 on the grounds that: 1) Plaintiff's first claim for breach of contract fails as a matter of law because Plaintiff was in privity of contract with another party, not Defendant; 2) There is no dispute of fact regarding Plaintiff's failure to pay for the services that she contract for with Soley, excusing Soley's performance for any remaining obligations thereunder; 3) Plaintiff's first claim for breach of contract fails as a matter of law because Plaintiff's alleged contract terms are not supported by the evidence; 4) Plaintiff's first claim for breach of contract fails as a matter of law because it seeks complete rescission and restitution, an extraordinary remedy not supported by these facts; 5) Plaintiff's second claim for fraud fails because Plaintiff cannot raise a triable issue as to the essential elements, including scienter, the intent to defraud, justifiable reliance, and resulting damage; 6) Plaintiff's alter ego allegations fail as a matter of law because they lack any factual basis whatsoever; and 7) Plaintiff's third claim for imposition of constructive trust for unjust enrichment/alter ego/piercing the corporate veil and an accounting fails as a matter of law because plaintiff cannot show she is entitled to the res or that defendant wrongfully obtained the res.

This Motion is based on this Notice of Motion, the declarations of Ryan C. Wood, Esq., Defendant Sandy Phillips, Dr. Emma Tomlinson, Dr. Tim Galer and Dr. Chris H. Shepherd, the request for judicial notice, the accompanying Memorandum of Points and Authorities, the pleading and files in this action, and such other matters as may be presented at or before the hearing.[1]

---

[1]  Pursuant to the Local Rules of the District Court for the Northern District of California, and this particular Court's standing order, no separate statement of undisputed material facts is filed with this motion. Accordingly, the Statement of Facts and corresponding Argument below, cite to declarations, rather than undisputed material facts.

Stoel Rives LLP
Attorneys At Law
Sacramento

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS          -4-          4:18-CV-07822-HSG

104733328.1 0069202-00001

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3    This is a relatively straightforward breach of contract case, except for the fact that Plaintiff

4    has named an incorrect party. Plaintiff elected to name, as an individual defendant, the Director of

5    the company known as Soley Performance Limited (hereinafter "Soley"). Soley is a named

6    Defendant, but it has not been served. The only defendant before the court is Defendant Sandy

7    Phillips. Because Defendant Phillips was not a party in privity with plaintiff in the alleged

8    agreement, and she was merely acting as an employee for Sully, Summary adjudication should be

9    granted as there are no disputes on these material facts.

10    Additionally, the undisputed facts demonstrate that Plaintiff has failed to meet her payment

11    obligations for the services that she contracted for with Soley. As a result, the only conclusion

12    would be to excuse Soley from further performance, which as alleged precludes any relief for the

13    breach of contract cause action (and related claims) against Defendant Philips by extension. The

14    Court should, therefore, grant Defendant Phillips' motion for summary judgment, or alternatively

15    summary adjudication.

16    **II.    STATEMENT OF FACTS**

17    **A.    Background of Sandy Phillips and the Mare "Lara"**

18    Defendant Sandy Phillips ("Defendant") resides and is domiciled in Saintbury,

19    Worcestershire, United Kingdom. She is the sole shareholder and Director of Soley Performance

20    Limited ("Soley"), a private limited company in Britain, which is also named as a Defendant in the

21    amended complaint.[2]  However, as discussed in more detail below, Soley was never served with

22    process in the either the state or federal actions. Phillips Decl. ¶¶ 2, 3, Ex. 1.

23    Soley incorporated in 2014 in England to perform services as an equine company. Phillips

24    _____

25    [2]  A "private limited company" can be the United States equivalent of either a limited liability
company or a corporation depending on its organization and structure. See, e.g., *Century Metal*

26    *Recycling, Pvt. Ltd. v. Dacon Logistics, LLC*, No. 3:13–cv–00093 (CSH), 2013 WL 5929816, at
*3 (D. Conn. Nov. 4, 2013). For purposes of this motion, it does not matter whether the court

27    considers Soley to be an LLC or corporation. Regardless of how the Court treats Soley, it is
undisputed that Soley is a lawful business entity formed under the laws of the United Kingdom

28    with limited liability protection for its shareholder, Defendant Sandy Phillips.

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS                    -5-                    4:18-CV-07822-HSG

104733328.1 0069202-00001

Decl. ¶ 3. When it was incorporated, Defendant Phillips was, and is today, the sole shareholder of Soley. Additionally, as stated on page 3 of the Articles of Association, the liability of Soley's members is "limited to the amount, if any, unpaid on the shares held by them."  Soley is domiciled in the United Kingdom. Phillips Decl. ¶ 3, <u>Ex. 1</u>.

As Soley's Director, her duties include management of the company's business, overseeing the upkeep, training, and the competition schedules of horses in its care. Phillips Decl. ¶ 4. Through her work at Soley, and prior to its formation, she successfully bred as many as five mares, producing no fewer than 25 quality live foals, most of which received foal premiums from the relevant breeding societies reflecting their exceptional quality. *Id*. Two of these foals became licensed stallions, and one of those two received "Premium Status" from the Oldenburg Verband Society. *Id*. Defendant has extensive knowledge and experience in horse breeding, which she began in 2004, and still continues on a limited basis for the sport of eventing only. *Id*. For example, Defendant's experience in horse breeding includes breeding mares to carry foals and embryo transfer methods to create pregnancies, including the transaction described below. *Id*. The embryo transfer transaction with Plaintiff is a standard practice utilized by Soley, and has been a common practice in the equine industry in the United States and the United Kingdom for mares with valuable bloodlines. *Id*.

Defendant is an International Dressage Trainer, International Dressage and Eventing Judge, and she was a Member of Ground Jury 2016 Olympics Games in Rio di Janeiro. Phillips Decl. ¶ 5. She successfully competed nationally and internationally in both eventing and dressage, finishing second at the prestigious Badminton Horse Trials in 1981 and competing on the United States Dressage Team at the 1984 Los Angeles Olympics. *Id*. She represented the United States at two World Equestrian Games. Because she has dual citizenship, she also represented Britain at the 1998 World Equestrian Games, the 1999 European Championships and the 2006 World Equestrian Games. *Id*.

Lara, one of Soley's broodmares, is one of the mares that is the subject of this lawsuit. Phillips Decl. ¶ 6. Lara was a popular and well-known mare in the international dressage community. *Id*. In 2005, Defendant began competing Lara at Grand Prix, the highest level of the

Stoel Rives LLP
Attorneys At Law
Sacramento

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS

-6-

4:18-CV-07822-HSG

104733328.1 0069202-00001

sport of dressage, and the pair were selected in 2006 to compete on the British team in the World

Equestrian Games. *Id*. They placed sixth with the team, and 28th place in the Grand Prix Special.

They also won the British national Grand Prix championship in 2006. *Id*.

An injury ended Lara's sport career in 2007, after which she became a fulltime broodmare

for Soley, having already had two embryo transfer foals while still competing. Phillips Decl. ¶ 7.

During her lifetime, Lara proved herself to be a high-quality broodmare, producing 11 live foals in

ten years from 2005-2015, which, under any standard in the equine industry, qualifies her as a

reliable breeder. *Id*. Some notable progeny include, two Oldenburg registered licensed sons

including the licensed stallion Diamond Design (by Diamond Hit) who she produced through

embryo transfer. *Id*. Lara was a good broodmare capable of producing high-quality offspring at the

time the agreement was made with Plaintiff to bred Lara, and at all times relevant to the issues in

this action. *Id*. This is confirmed by the three equine reproduction veterinarians who worked with

Lara, who filed their own declarations concurrently with this declaration. For instance, Dr. Chris

H. Shepherd states:

> [F]or the past 15 years… I managed most of the reproductive performance of
> Lara. . . . ***In total, nine foals were produced and reared in the period
> between 2007 and 2014 when I was most involved. I am also aware that
> she had two more foals***. . . Although Lara required careful gynecological
> management around the time of insemination because she was an older,
> former competition mare***, I would consider Lara to be a very productive
> and successful broodmare having produced eleven foals in her breeding
> career***. Shepherd Decl. ¶ 3 (emphasis added).

This observation by Dr. Shepherd is bolstered by two other veterinarians who have personal

knowledge of Lara, including Dr. Tim Galer ("I understood Lara to be a good regular breeding

mare…" Galer Decl. ¶ 3) and Dr. Emma Tomlinson ("Lara had a very good breeding history. In

addition, mares of Lara's age are perfectly capable of producing embryo pregnancies, as we saw

no reason not to try breeding Lara again after 2016 due to her age." Tomlinson Decl. ¶ 4.).

**B.     Plaintiff Kirsten Ridgway and the Contract Terms**

In the winter of 2015, a mutual acquaintance of Defendant and Plaintiff, who knew Soley

did not plan to continue breeding Lara and Riverdance, suggested to Plaintiff that it might be an

idea for her to use two of Soley's mares for breeding in the United Kingdom. Phillips Decl. ¶ 8.

Stoel Rives LLP
Attorneys At Law
Sacramento

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS

-7-

4:18-CV-07822-HSG

104733328.1 0069202-00001

1    Plaintiff expressed some interest, but no agreement was made or arrangements agreed to initially.

2    *Id.*

3        Having not heard back, Defendant contacted Plaintiff by text message from the United

4    Kingdom on April 19, 2016, to see if she wanted to proceed as breeding season had already begun.

5    Phillips Decl. ¶ 8, Ex. 2. Specifically, Defendant texted Plaintiff the following message:

6            Hi Kirsten, hope all good with you. Just wondering if you want to go ahead
             with breeding Lara and Riverdance as we should get on with it!  My email
7            is: sandy@equiland.co.uk  Please let me know what you want to do. Cheers
             😊  See Ex. 2-019, (dated "19 Apr 2016, 00:34").
8
9        Plaintiff wanted to use two of Soley's mares, Lara and Riverdance, for breeding, which is

10   evidenced in writing by way of her text message:  "Yes I do!!! Thank you so much!  I'll email you

11   for details."  Phillips Decl. ¶ 9, Ex. 2-019. Riverdance, like Lara, had previously produced many

12   top-quality offspring, and would ultimately produce a live foal as a part of this transaction with

13   Plaintiff. Phillips Decl. ¶ 11.

14       Defendant's agreement with Plaintiff was not reduced to a single written agreement but was

15   based on emails, text messages, and telephone conversations. Phillips Decl. ¶ 12. On May 16, 2019,

16   with breeding season underway, Defendant sent Plaintiff an email advising her that this would be

17   an "embryo transfer for both [mares]" and that "we need to get going with the breeding." *Id.*, Ex. 3.

18   On May 27, 2016, Defendant sent an email to Plaintiff confirming the terms of the arrangement.

19   *Id.*, Ex. 4 (the May 27, 2016 email with the offer of the initial contract terms) the terms below are

20   taken, verbatim, from the May 27, 2016 email:

21           Just confirming that you want to go ahead with the breeding of Lara and
             Riverdance. They can be inseminated here with my local vet and the embryo
22           transfer is done by Beaufort Embryo Transfer who has done all my work
             over the years and knows the mares very well. You can pay Beaufort and the
23           local vet directly. The summer keep for the mares is £12 per day, the winter
             keep is £22, and the timing of when they start winter keep depends on the
24           weather. We try to keep them out as long as possible. The cost of the embryo
             for Lara is £12,000 The cost of the embryo for Riverdance is £8,000 Please
25           confirm what stallions you want to use and we can organise it. For Lara, Sir
             Donnerhall and Fursten Look are very good For Riverdance, she works
26           really well with my stallion, Diamond Design, by Diamond Hit -- she makes
             very big babies so don't put her to anything too big!!

27       Pursuant to these terms, the "keep" fees are for all costs of care for the mares including

28   board. Phillips Decl. ¶ 13. As is standard in the industry, other hard costs such as farrier costs for

Stoel Rives LLP
Attorneys At Law
Sacramento

SANDY PHILLIPS' MOTION FOR                    -8-                    4:18-CV-07822-HSG
SUMMARY JUDGMENT; MPAS

104733328.1 0069202-00001

hoof trims, routine veterinary work, stallion breeding fees, veterinary reproduction fees, and Soley's costs for the mares in connection with breeding, etc. are billed separately and paid by the individual using the mares for breeding. *Id.* It is a standard practice while breeding specific mares to charge these fees, both at Soley and in the equine industry in both the UK and United States. *Id.*

On June 3, 2016, Plaintiff confirmed that she wanted to move forward with the breeding: "Yes got your email. Thanks so much!  I'd like to move forward…"  Phillips Decl. ¶ 14, Ex. 5. Defendant responded on that same day confirming their plans to move forward as follows:

> Ok, we just need to know what stallions I will have Beaufort Embryo Transfer email you direct with contracts and you can pay them direct. When I know the stallion, you can pay direct … Phillips Decl. ¶ 15, Ex. 6.

On June 8, 2016, Soley's Book Keeper, Martin Green, sent Plaintiff an email and introduced himself as "Book Keeper for Soley Performance Limited."  Phillips Decl. ¶ 16, Ex. 7. He attached to that email two invoices, one for use of each of the two mares. *Id.* Both of the invoices, as with every invoice sent to Plaintiff, had the following header:

**SOLEY PERFORMANCE LIMITED**
**GLEBE FARM, SAINTBURY, WORCESTERSHIRE, WR12 7PX**

Prior to commencing any work, Defendant insisted via text messages that Plaintiff wire the mare embryo fees, and on June 16, 2016, Plaintiff sent Defendant a text message indicating that she was having second thoughts about proceeding with the agreement:

> From Defendant Sandy Phillips:
> Hi can you confirm when funds have been sent and whether in dollars or pounds? thanks (June 15, 2016, 2:02 PM)
>
> Kirsten can you confirm my last text please thanks Sandy (Jun 16, 2016, 5:07 PM)
>
> From Plaintiff Kirsten Ridgway:
> I've had a super crazy work week. I didn't have the light day like I thought I would. I need to crunch the numbers again. I don't know if I'm going to be able to swing it this year. They are starting construction on my arena in 2 weeks. Next year would probably be better if that is a possibility (Jun 16, 2016, 6:13 PM)  Phillips Decl. ¶ 17, Ex. 2-045,046.

However, despite this statement, Plaintiff did not withdraw from the agreement and ultimately paid the initial fees for the use of the mares pursuant to the Soley invoices sent by Mr.

Stoel Rives LLP
Attorneys At Law
Sacramento

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS

-9-

4:18-CV-07822-HSG

104733328.1 0069202-00001

Green. Phillips Decl. ¶ 18. Consistent with Defendant's email to Plaintiff on May 27, 2016, Mr. Green's email on June 8, 2016, and Defendant's text messages, Plaintiff paid the fees via wire transfer to Soley's account in the amounts of £12,000 for use of Lara to produce an embryo via embryo transfer, and £8,000 for Riverdance. Phillips Decl. ¶ 19. While embryo transfer from Riverdance was initially considered, because Riverdance was capable of carrying the embryo herself and the breeding costs of that would be less, Plaintiff and Defendant discussed and agreed that Riverdance would ultimately carry the embryo and deliver the foal. *Id*.

Soley fully performed its obligations under the agreement, until lack of payment from Plaintiff interrupted Soley's ability to provide its services to maintain the horses, which by that time, included Riverdance's foal "Art."  Phillips Decl. ¶ 20. And as contemplated, those services generated costs that were properly invoiced to Plaintiff. *Id*. Over the course of the transaction, these services included, among other costs, the care and upkeep of the mares, transporting Lara to the embryo transfer facility, and Soley's work to ensure that the breeding work proceeded by the veterinarians retained by Plaintiff. *Id.* Soley continued to bill Plaintiff for the work it did under the agreement in terms of upkeep and invoices for the farrier etc., and other bills it paid on Plaintiff's behalf. *Id*., Ex. 8 (compilation of Soley invoices to Plaintiff); see also Ex. 9 (compilation of Statements of Account reflecting Plaintiff's invoicing and payment history).

After three breeding attempts and embryo transfer flushes from Lara that did not produce an embryo, Plaintiff decided in September 2016 that efforts to impregnate Lara in 2016 would be halted as suitable stallions no longer were being collected for breeding. Phillips Decl. ¶ 21. Plaintiff had the option to continue attempting to have Lara impregnated in 2017 consistent with the recommendations of the veterinarians at Beaufort Embryo Transfer. *Id*.; see also Tomlinson Decl. ¶¶ 3,4. In November of 2016, Plaintiff decided she did not want to try again for an embryo transfer from Lara in 2017 season.

To be clear, Lara's fertility was unrelated to her anticipated ability to successfully breed in 2017 by way of embryo transfer. Phillips Decl. ¶ 22; see also Tomlinson Decl. ¶¶ 3,4; Shepherd Decl. ¶ 3; Galer Decl. ¶ 3. In 2014, Lara was kicked while in her winter turn out, which caused her to be lame in her right hind leg and was the reason she was only available for embryo transfer. *Id*.

Stoel Rives LLP
ATTORNEYS AT LAW
SACRAMENTO

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS

-10-

4:18-CV-07822-HSG

104733328.1 0069202-00001

The increasing weight of a pregnancy would have been too much for her injured leg. *Id*. This was a manageable condition which had no bearing on her ability to produce an embryo. *Id*. That is why the transaction with Plaintiff was always intended to be an embryo transfer for Lara. *Id*. Lara was still ***very*** capable of breeding, because her injury had nothing to do with her reproductive health, and breeding her only required her to carry an embryo for approximately seven days before it would be flushed out for a surrogate mare to carry. *Id*. In December of 2016, her old injury made it increasingly difficult for her to move around comfortably as the British winter began, and in the interest of horse welfare, she was humanely euthanized in December 2016. *Id*. This decision, in the best interests of Lara, had no impact on Plaintiff who had already decided not to proceed with an embryo transfer from Lara in 2017. *Id*.

Although the terms of the agreement did not obligate Defendant to do so, following Lara's euthanasia, Defendant refunded the money to Plaintiff by crediting her account that was significantly past due at that point. Phillips Decl. ¶ 23. In fact, Plaintiff had not been making consistent payments after her initial payment for use of the mares at the beginning of the arrangement in 2016. *Id*. Hence, the billing as of June 2017 reflected application of the £12,000 credit for the use of Lara against Plaintiff's unpaid bills. Phillips Decl. ¶ 24, <u>Ex. 9-074</u>. Plaintiff's account remained in arrears even after the credit. *Id*.

The other mare, Riverdance, became pregnant in 2016. Phillips Decl. ¶ 25. Her keep and costs continued to be invoiced by Soley through the birth and weaning of the colt in January 2018. *Id*. In July of 2017, Defendant sent the following text messages to Plaintiff to update her on the good news about Riverdance delivering her foal:

> 4 white socks and a star It's a boy!! (Jul 5, 2017, 9:42 AM)
> Forgot to say he's black! (Jul 5, 2017, 11:26 AM) Phillips Decl. ¶ 25, <u>Ex. 2-20</u>

There was no immediate response from Plaintiff and a period of silence began where Plaintiff had no communication with Defendant. Phillips Decl. ¶ 27. The next month, Defendant sent her another text message:

> Kirsten, I'm not sure what this lack of communication is about but I think we need to move on I asked you to contact me about your foal's branding

Stoel Rives LLP
Attorneys At Law
Sacramento

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS

-11-

4:18-CV-07822-HSG

104733328.1 0069202-00001

and if I don't hear from you I can't take it any further Please respond
Thanks Sandy  Phillips Decl. ¶ 27, <u>Ex. 2-21</u> (Aug 13, 2017, 1:33 PM).

Plaintiff finally responded, and a text message exchange ensued wherein she claimed that she didn't know that Defendant tried to contact her, citing to several excuses:

> <u>Plaintiff Kirsten Ridgway:</u>
> I didn't know you tried to contact me. Please contact me via text or WhatsApp I'll respond to those right away.  Did you email me? I'm not an email person. I get over 300 emails a day and unless I know to look for something specifically I don't usually see it. Can he be branded instead of microchipped? (Aug 13, 2017, 7:15 PM)
>
> <u>Defendant Sandy Phillips:</u>
> Ok, you must choose if you want him just registered for £120- he will be branded and microchipped or if you want him assessed for the foal premium £200 as well Have you been getting the monthly emails from Martin? If so can you please take care of it and if not lmk Thanks (Aug 14,  2017, 12:06 AM).
>
> <u>Plaintiff Kirsten Ridgway:</u>
> I'd like him assessed. That would be from Tommy and Holly? I'll contact him. I'll look up emails from (Aug 14, 2017, 8:05 AM)

Phillips Decl. ¶ 24, <u>Ex. 2-022-024</u>.

Having regained communication with Plaintiff, Defendant asked her again to bring her account with Soley current, as she was past due.:

> <u>Defendant Sandy Phillips:</u>
> Hi Kirsten, now that I know you are receiving your statements on text, can you please bring your account up to date this month Thanks Sandy (Oct 6, 2017, 1:38 PM).  Phillips Decl. ¶ 29, <u>Ex. 2-027</u>.

Plaintiff never disputed or challenged the terms set forth in the May 27, 2016 email, the other communications about the terms of the agreement, or the invoices sent to her by Soley's Book Keeper from the June 8, 2016 invoice until Soley had largely performed its obligations and incurred costs into the following year. Phillips Decl. ¶ 30. It was on October 7, 2017 when, for the first time during this transaction, Plaintiff stated an objection to the Soley invoices:

> <u>Plaintiff Kirsten Ridgway:</u>
> Hi sandy, There are some serious issues with the bills that Martin has sent me.  He has sent them by email.  He gave me a total by text a couple of weeks ago. I am missing a few statements and have not had statement of accounts for the money that was wired to to in June of last year. I am forwarding the statements to my accountant. I want to get this settled with

Stoel Rives LLP
Attorneys At Law
Sacramento

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS

-12-

4:18-CV-07822-HSG

104733328.1 0069202-00001

you as soon as possible! How is my colt? How did inspections go? I would love an update. (Oct 7, 2017, 8: 56 PM). *Id.*, Ex. 2-027-29

On October 8, 2017, Plaintiff asked via email for copies of some invoices, the first of which had been sent on October 1, 2016. Phillips Decl. ¶ 31, <u>Ex. 10</u>. Plaintiff claimed she had not received certain invoices, but admitted she had received Statement of Accounts setting forth the amounts due under those invoices for August 2016, October 2016, January 2017, March 2017, May 2017, June 2017, and October 2017. *Id.*, <u>Ex. 10</u> (October 8, 2017 email).

Defendant also exchanged text messages with Plaintiff as follows:

<u>Defendant Sandy Phillips:</u>
Kirsten, you have been sent monthly statements by email with all monies reconciled from June last year What is it you don't understand? Have some statements been "lost" in your email account? We need to sort this out Your foal is fine, he got a premium at the inspection

<u>Plaintiff Kirsten Ridgway:</u>
I agree we need to sort this out. There are issues with some of the invoices and there is no accounting of the for the money I wired for Lara's embryo. There are also some months that are missing invoices. Like I said I want to get this straightened out as soon as· possible. I have mailed copies of all the invoices and statements that I have, including copies of my wire transfers to you, to my accountant. I will give her martin's email address. I want to get this squared up by the end of the month There are also some months that are missing invoices. Like I said I want to get this straightened out as soon as possible. I have mailed copies of all the invoices and statements that I have, including copies of my wire transfers to you, to my accountant. I will give her martin's email address. I want to get this squared up by the end of the month. Glad to know he got a premium. When were inspections? It's good to get updates! Please keep them (Oct 7, 2017, 10:16 PM). Phillips Decl. ¶ 32, <u>Ex. 2-030-031</u>

Despite Plaintiff's representations that she did not receive invoices form Soley, Defendant confirmed that Soley's IT system recorded successful delivery of all the emails and invoices to Plaintiff.  Phillips Decl. ¶ 33. On October 12, 2017, Martin Green, Soley's Book Keeper, responded to her request and resent a first batch of the invoices and documents. Phillips Decl. ¶ 34. Martin Green requested confirmation of receipt, but did not receive any. *Id.*, <u>Ex. 11</u>.

At all relevant times, the agreement for Plaintiff's use of the Soley mares to produce embryos and ultimately a foal was a business arrangement between Soley and Plaintiff, not Defendant Sandy Phillips as an individual, and Plaintiff was invoiced accordingly. Phillips Decl. ¶ 35. For its part, Soley charged Plaintiff the fees for use of the two mares Lara and Riverdance

Stoel Rives LLP
Attorneys At Law
Sacramento

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS          -13-                    4:18-CV-07822-HSG

104733328.1 0069202-00001

(12,000 and 8,000 respectively), the summer and winter keep fees as well as the day to day costs necessary to maintain the horses' wellbeing, including feed, transportation, and outstanding invoices for which Plaintiff was responsible and for which Soley advanced payment such as feet trimming, etc., and a stud fee for the stallion used by Plaintiff to breed one of the mares which she did not timely pay. *Id*. Consistent with the agreement, all of these costs were invoiced by Soley to Plaintiff. *Id*.

There was not a guarantee of a live foal between Soley and Plaintiff, and the only provision for a live foal is contained in the breeding agreement between Plaintiff and the stallion station for the stallion she used, and which provides only for a discounted stud fee the following year if the mare did not get in foal in 2016. Phillips Decl. ¶ 36. This is standard in the industry in Europe and Britain. *Id*. It is not standard in the warmblood breeding industry to ever refund money if a mare does not get in foal or deliver a live foal the following year after the 11 month gestation. *Id*.

On November 11, 2017, Plaintiff indicated that she was still missing two invoices and two statements of accounts. Phillips Decl. ¶ 37, Ex. 12. The first of these invoices had been sent on June 1, 2017. *Id*. Plaintiff also stated that she "look[ed] forward to clearing up these bills." *Id*. Martin Green responded on November 12, 2017, with the requested invoices and statements despite the IT system's indication that Plaintiff had in fact received these documents previously. *Id*.

By December 1, 2017, Defendant had received no further communications or payment of the outstanding balance. Phillips Decl. ¶ 38. Defendant then sent a text message to Plaintiff saying that the colt needed to be moved to another facility for weaning which required payment up front on the first of the month:

> Defendant Sandy Phillips:
> Hi Kirsten, Hopefully you and your accountant have had ample time to see your accounts and you can take care of them this month Your foal is due to be weaned and move to be with others his age This requires payment upfront on the first of the month  Without it he will be alone and I do not advise this Please get in touch Thanks Sandy (Dec 1, 2017, 12:37 PM)

> Plaintiff Kirsten Ridgway:
> I currently out of town. I'll call my accountant on Monday. She should be back from vacation. I'll make sure she has everything and yours and martins email addresses. (Dec 2, 2017, 9:00 AM). *Id*., Ex. 2-033-034

By January 4, 2018, Defendant had not received payment or heard back from Plaintiff.

Stoel Rives LLP
Attorneys At Law
Sacramento

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS                    -14-                    4:18-CV-07822-HSG

104733328.1 0069202-00001

Phillips Decl. ¶ 39. Soley's bookkeeper had sent a statement of the amounts due through December

2017, and Defendant sent another text message to Plaintiff stressing the urgency of receiving

payment:

> Defendant Sandy Phillips:
> Hi Kirsten, I know Martin has sent you your statement Due through
> December. I am not willing to wait any longer for you to bring your account
> up to date, it has been too long Please have the money wired to the Soley
> account by next Friday January 12 or I will have to proceed with a collection
> agency Many thanks Sandy (Jan 4, 2018, 1:44 PM) Phillips Decl. ¶ 39,
> Ex. 2-035.

If an owner fails to pay expenses for a horse's upkeep, it is standard practice in the industry

and for Soley to sell a horse to recover outstanding amounts due after providing notice to the owner,

and refund the remainder to the owner. Phillips Decl. ¶ 40. Accordingly, on February 6, 2018,

Defendant made a last attempt to make contact with Plaintiff. *Id*. By text message Defendant

advised Plaintiff to pay in full immediately or the foal would have to be sold to cover Soley's costs:

> Hi Kirsten, I'm not sure what is going on with you but it's very sad that
> things have deteriorated to this point. This is my last attempt to try and make
> contact with you and I hope you will respond I know the company I hired
> has made contact with you and you have hung up the phone I really hope
> that it will not be necessary to get an enforcement order  Thanks Sandy
> (Feb 6, 2018, 9:37 AM  *Id*., Ex. 2-039).

Defendant kept Plaintiff up to date on the colt, and his inspection results after being

presented at the breed association. Phillips Decl. ¶ 41. The colt received Premium status from the

Oldenburg Verband at his inspection. *Id*. After Defendant sent the text above, Defendant then spoke

to Plaintiff who said she would wire the money. *Id*. The outstanding amount due at that time totaled

approximately £6,109.64. *Id*. On February 9, Plaintiff advised Defendant that she had sent a wire

transfer in £5,000 and sent picture of wire transfer document. *Id*.

On February 12, 2018, Soley received £5,000 from Plaintiff. Phillips Decl. ¶ 42; see Ex. 13.

However, this still did not bring the account current. *Id*. On February 13, 2018, Martin Green

received an email from Sarah Morton (aka Sarah Snider) who indicated she was reviewing invoices

from Soley to Plaintiff. Phillips Decl. ¶ 43, Ex. 14. Ms. Morton informed Soley that Plaintiff

experienced a traumatic brain injury on December 18, 2017, and therefore could not read, watch

TV, or spend screen time on a computer. *Id*. This was the first Defendant learned of the purported

Stoel Rives LLP
Attorneys At Law
Sacramento

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS
-15-
4:18-CV-07822-HSG

104733328.1 0069202-00001

brain injury. *Id*. Ms. Morton requested that Defendant refund even more funds. *Id*.

Over the course of June 2016 through February 2018, Defendant contacted Plaintiff via text, email (See Ex.s referenced above), and phone, asking that she immediately bring her account up to date, she did not make payment in full after stating that she would, nor did she mention any injury that would keep her from paying these invoices. Phillips Decl. ¶¶ 44, 45. Despite Plaintiff's obligation to pay the stallion owner (who provided the semen to inseminate the mares), Plaintiff did not pay all of the bills, and Soley then had to pay the owner directly, and backcharge Plaintiff. Phillips Decl. ¶ 45. Plaintiff also did not directly pay the registration and inspection fees for the foal born to Riverdance which Soley paid for and invoiced Plaintiff. *Id*.

Eventually, because Soley had still not been paid in full after many attempts to collect the balance due, the colt was sold, and after paying off the balance owed to Soley, Soley remitted the £3,000 remainder to Plaintiff, which brought her account current and the transaction was concluded. Phillips Decl. ¶ 46.

## C.   Service of Process and Procedural Posture

On or about November 28, 2018, Plaintiff filed this action in state court. Phillips Decl. ¶ 49, Ex. 15. On or about December 2, 2018, Defendant Sandy Phillips was served with a summons and complaint for a California state court case in Sonoma County. As reflected on Ex. 15, Defendant was purportedly served as an individual, and as an individual doing business as Soley Performance Limited.

Defendant Sandy Phillips, through counsel, meet and conferred with Plaintiff's counsel regarding whether Soley had been served. Wood Decl. ¶¶ 2-5, Exs. 16-19. Having seen Certificates of Service appear on the court's ECF docket, defense counsel transmitted a meet and confer letter dated October 7, 2019, requesting information about whether Soley had been served. *Id*. Defense counsel did not respond, but during Plaintiff's deposition, defense counsel again inquired, this time with the Plaintiff while under oath, if she had caused Soley to be served properly. *Id*. However, Plaintiff counsel objected and stated, "I am not here to testify. We can discuss that later." *Id*. Despite multiple inquiries with Plaintiff's counsel, defense counsel never received any confirmation that Defendant Soley was properly served with the First Amended Complaint and

Stoel Rives LLP
Attorneys At Law
Sacramento

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS                    -16-                    4:18-CV-07822-HSG

104733328.1 0069202-00001

1   Summons, or even the original state court action.

2          When it issued the ruling on Defendant Sandy Phillips' motion to dismiss based upon lack

3   of personal jurisdiction, this Court made the following findings about the proper party Defendant

4   in this action:

5          Although Ms. Phillips admits to being the "sole member and shareholder of
           Soley," *Id.*, Plaintiff does not present any evidence to refute the allegation
6          that Soley is a separate limited liability company, nor does Plaintiff discuss
           the legal nature of Soley or its relationship with Ms. Phillips.2 Therefore, ***to***
7          ***the extent that Plaintiff is attempting to assert a claim against Soley***
           ***through the "doing business as" allegation, the Court agrees that Soley is***
8          ***not properly named as a defendant in this action***. RJN, Ex. 23 (emphasis
           added).
9

10         Defense counsel had authority at one point to accept service on behalf of Defendant Soley,

11  but only if Plaintiff would agree to dismiss Defendant Sandy Phillips (an erroneously named

12  individual defendant) from the action. Wood Decl ¶¶ 2-5, Ex. 16. Because plaintiff never agreed,

13  defense counsel does not have authority to appear on behalf of Sully, which is still not properly

14  before this court and under the court's jurisdiction period Additionally, nothing in this motion

15  should be construed as an appearance on behalf of defendant solely, and these facts are presented

16  to the court merely to provide guidance as to how to dispose of the matter after ruling on defendant

17  Sandy Phillips motion for summary judgment.

18  **III.     STANDARD ON SUMMARY JUDGMENT**

19         Under the federal rules, "[a] party may move for summary judgment, identifying each claim

20  or defense—or the part of each claim or defense—on which summary judgment is sought. The

21  court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

22  material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). A

23  material fact is one that is relevant to an element of a claim or defense and whose existence might

24  affect the outcome of the suit. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

25  586 (1986). The moving party has the initial burden of demonstrating that summary judgment is

26  proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). If the moving party meets the

27  initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating

28  "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *see*

Stoel Rives LLP
Attorneys At Law
Sacramento

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS                    -17-                    4:18-CV-07822-HSG

104733328.1 0069202-00001

*also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient. . ."). The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks and citation omitted). If the nonmoving party fails to make this showing, the moving party is entitled to summary judgment. *Id*. at 323.

## IV.   **ARGUMENT**

### A.   **Plaintiff's First Claim For Breach Of Contract Fails As A Matter Of Law, Because Plaintiff Was In Privity Of Contract With Soley, Not Sandy Phillips.**

For a contract to exist, there must be privity of contract. *See, e.g.*, *Superior Gunite v. Ralph Mitzel, Inc.*, 117 Cal. App. 4th 301, 304 (2004). A person who engages in a deal as an agent for a disclosed principal is not a party to the contract. *E.g.*, *Carlesimo v. Schwebel*, 87 Cal. App. 2d 482, 486-88 (1948). Agents or officers of a company are not personally liable if the third person knew, or in the exercise of reasonable care should have known, that he was dealing with the principal company. *Id*. at 486. "The fact of agency and the identify of the principal may both be disclosed to or known by the other party other than from the contract itself." *E.g. G.W. Andersen Construction Co. v. Mars Sales*, 164 Cal. App. 3d 326, 333 (1985). "[T]he mere self-serving statement of the third party that he did not know of the existence of the corporation is not binding on the trier." *Carlesimo*, 87 Cal. App. 2d at 486. In *Carlesimo*, the identity of the principal was sufficiently disclosed where the door to a party's office had the abbreviation "Inc." on the sign and the contract contained the party's name on the letterhead and near the signature block even though the signature block lacked the word "By" near the agent's signature. *See Carlesimo*, 87 Cal. App. 2d at 486-88.

Here, the essential terms were set forth in an offer transmitted via email on May 27, 2016. In that email, Defendant set forth the basic terms of the embryo transfer process and related costs. Thereafter, Plaintiff expressed a willingness to move forward. Prior to commencing any work, Defendant made it clear to Plaintiff that payment was mandatory on the first two invoices, which were sent via email by Soley's Book Keeper, Martin Green, on June 8, 2016. The first two invoices

Stoel Rives LLP
Attorneys At Law
Sacramento

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS

-18-

4:18-CV-07822-HSG

104733328.1 0069202-00001

were for the embryo transfer fees for Lara and Riverdance at £12,000 and £8,000 respectively. Both invoices were on Soley Performance Limited letterhead with Soley's bank wire instructions.

Additionally, the invoices included wire transfer information to send the funds directly to Soley Performance Limited. Plaintiff did exactly that, as evidenced in her own document production, which included confirmation of some of the wire transfers throughout this transaction, specifically noting payment to Soley's account. Accordingly, Plaintiff cannot claim ignorance of Soley as the true party in privity in this case, and there are no facts that would suggest otherwise.

Pursuant to local rule, Defendant did not present the Court with a separate statement of undisputed material facts. But to be clear, the facts material for the purposes of this argument are the terms, memorialized in several writings. This includes an email on May 27, 2016, setting forth part of the offer, a series of text messages, emails, Soley Performance Limited invoices, and wire payments to Soley on those invoices. These material facts are undisputed. Therefore, the Court should find that there are no triable issues of material fact regarding the parties and their respective privity of contract with each other, and dismiss Defendant Phillips who was merely acting as an employee for Soley at all times relevant.

**B.      There Is No Dispute of Fact Regarding Plaintiff's Failure to Pay for The Services That She Contracted For With Soley, Excusing Soley's Performance For Any Remaining Obligations Thereunder.**

A plaintiff cannot succeed on a claim for breach of contract unless the plaintiff shows, with competent evidence, that she performed her obligations or was excused for non-performance. *E.g.*, *Consolidated World Investments, Inc., v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1992). "It is elementary a plaintiff suing for breach of contract must prove it has performed all conditions on its part or that it was excused from performance." *Id.* "Similarly, where defendant's duty to perform under the contract is conditioned on the happening of some event, the plaintiff must prove the event transpired." *Cochran v. Ellsworth*, 126 Cal. App. 2d 429, 440–41 (1954).

The failure to perform payment obligations can discharge the other party's duty to perform a contractual obligation if the failure is a material breach. *See, e.g.*, *MAG Aerospace Indus., LLC v. Precise Aerospace Mfg., Inc.*, No. 5:18-cv-01096-RGK-JC, 2019 WL 3306010, at * 10-11 (C.D. Cal. July 23, 2019) (citing *Brown v. Grimes*, 192 Cal. App. 4th 265, 277 (2011)). A breach or

Stoel Rives LLP
Attorneys At Law
Sacramento

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS

-19-

4:18-CV-07822-HSG

104733328.1 0069202-00001

nonperformance is material when it "frustrate[s] the purpose of the contract*." Superior Motels, Inc. v. Rinn Motor Hotels, Inc.*, 195 Cal. App. 3d 1032, 1051 (1987) (citation omitted). "[I]f reasonable minds cannot differ on the issue of materiality, the issue may be resolved as a matter of law." *Brown*, 192 Cal. App. 4th at 278.

As an essential element of Plaintiff's breach of contract theory, as well as the other causes of action, she has to perform her obligations before she has a right to seek damages from any defendant. Here, the facts are undisputed that Plaintiff fell behind on her payment obligations to Soley in a substantial amount, which happened early and remained the case throughout the transaction. Plaintiff's failure to pay for Soley's services frustrated Defendant who administered the contract on behalf of Soley. Countless emails and text messages expressed the frustration from Defendant that payment needed to be made to Soley in order for the subject horses to receive the services, including the care and necessities typical for competition horses. Faced with no other choice, Riverdance's foal, "Art," could not remain in Soley's care in perpetuity. After ample notice and requests for Plaintiff to bring her account current, Soley ultimately sold the foal. After which, Soley used the funds to satisfy the account and bring it current. The remainder of the funds in the amount of £3,000 was remitted to Plaintiff. This failure to perform by Plaintiff excuses any conduct thereafter, including Soley's obligation to present the foal to Plaintiff. Soley was justified in selling the foal in order to cover its costs resulting from Plaintiff's lack of performance. It is Plaintiff's failure to meet the element of performance that is dispositive, and if Soley cannot be liable on a breach of contract theory, neither can Defendant Phillips. Not only was Soley's conduct reasonable, but it also demonstrates that Soley performed to fullest extent possible under the agreement.

Accordingly, the material facts are undisputed and the Court should find that Plaintiff's nonperformance justified Soley's decision to sell the foal and offset its costs.  Therefore all causes of action dependent upon the alleged breach should be precluded.

**C.**      **Plaintiff's First Claim For Breach Of Contract Fails As A Matter Of Law Because Plaintiff's Alleged Contract Terms Are Not Supported By The Evidence.**

Where a written agreement is incomplete (e.g., partly written and partly oral), the parol evidence rule does not bar extrinsic evidence on the terms not covered in the written agreement or

Stoel Rives LLP
Attorneys At Law
Sacramento

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS                    -20-                    4:18-CV-07822-HSG

104733328.1 0069202-00001

inconsistent therewith. *E.g.*, *Bowman v. Santa Clara*, 153 Cal. App. 2d 707, 711-12 (1957). However, the parol evidence rule will bar extrinsic evidence of oral terms to the extent those terms contradict those terms in the writing. *E.g.*, *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 954, 960 (2003).

Here, it is important to note that Plaintiff has alleged only one breach of the contract—that Riverdance's foal was sold. See RJN ¶ 4, Ex. 23, ¶ 12. As set forth above, Soley was justified in selling the foal because Plaintiff failed in its obligation to pay Soley for the services, which would be a breach of contract but for the fact that Soley was able to mitigate its damages by selling the foal. Further, Plaintiff contracted with Soley, not Defendant.

To the extent that Plaintiff may assert (though it is not pleaded) that Defendant breached a "live foal guarantee" by failing to produce a live foal from Lara, a "live foal guarantee" is not set forth in the written portion of the contract and it would contradict the written terms.

### D.     Plaintiff's First Claim For Breach Of Contract Fails As A Matter Of Law Because It Seeks Complete Rescission And Restitution, An Extraordinary Remedy Not Supported By These Facts.

Although Plaintiff purports to seek "damages" as the remedy for her breach of contract claim, she actually seeks to recover the $57,524.00 "she had paid" to Defendant "to purchase the two live foals." *See* RJN ¶ 4, ¶ 13. Thus, she seeks restitution and rescission, not typical contract damages. *Rizzo v. Ins. Co. of State of Pa.*, 969 F. Supp. 2d 1180, 1195-96 (C.D. Cal. 2013) ("In contrast to damages, restitution is designed 'to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest.'") (quoting *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003)); *Alder v. Drudis*, 30 Cal. 2d 372, 384 (1947) ("While there is no literal rescission of the contract, the result reached by the restitutionary remedy approximates that reached by rescission.").

#### 1.     The Gravity Of The Alleged Breach Is Not Sufficient To Justify Restitution Given Plaintiff's Own Conduct.

California Civil Code section 1689 sets forth the grounds under which a contract may be rescinded. As relevant here, a contract may rescinded by a party:

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS                -21-                4:18-CV-07822-HSG

104733328.1 0069202-00001

(2) If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds.. . .
(4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause.. . .

Cal. Civ. Code § 1689(b). "[A] partial failure of consideration justifies rescission only if the failure is 'material, or go[es] to the essence of the contract.'" *Fed. Deposit Ins. Corp. v. Air Fla. Sys., Inc.*, 822 F.3d 833, 840 (1987) (citing *Wyler v. Feuer*, 85 Cal. App. 3d 392, 633 (1978)).

As set forth above, Plaintiff failed to make required payments under the contract. As such, Plaintiff cannot contend that "the gravity" of the alleged breach is sufficient to justify rescission and restitution because Plaintiff herself caused Soley's purported breach of selling the foal.

### E.   Plaintiff's Second Claim For Fraud is Unsupported by Facts

"The elements of fraud . . . are (1) misrepresentation (false representation, concealment or non-disclosure); (2) knowledge of falsity (or 'scienter'); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Hackenthal v. Nat'l Casualty Co.*, 189 Cal. App. 3d 1102, 1110 (1987).

"[S]cienter or knowledge on the part of the defendant is adduced from the evidence, it constitutes a vital element of plaintiff's cause of action, and must affirmatively appear in the findings to support a judgment for fraud." *Wishnick v. Frye*, 111 Cal. App. 2d 926, 930-31 (1952), *disapproved on other grounds as recognized in Stone v. Farnell*, 239 F.2d 750, 754 (1956).

Here, Plaintiff claims that Defendant engaged in fraud by promising "two foals that were the offspring of two embryos from two mares named Riverdance and Lara" and by failing to deliver said foals. RJN ¶ 4, ¶¶ 15-16. But substantial evidence shows that Defendant had no intent to defraud Plaintiff in contracting for embryo transfers involving Soley's mares. The evidence shows that the veterinarian surgeons familiar with Lara thought she was a solid breeding mare, with a good breeding history. Shepherd Decl. ¶ 3; Galer Decl. ¶ 3; Tomlinson Decl. ¶ 4. These veterinarians corroborate Defendant's own sworn statement that she believed Lara to be a good breeding mare at the time Soley contracted with Plaintiff. In addition, in 2016, Soley permitted Lara to be inseminated *three separate times* in an attempt to provide Plaintiff with an embryo from Lara. *See* Galer Decl. ¶ 3. Although Lara never conceived, Plaintiff was even offered the option of

Stoel Rives LLP
Attorneys At Law
Sacramento

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS

-22-

4:18-CV-07822-HSG

104733328.1 0069202-00001

attempting to breed Lara again in 2017. Plaintiff declined the offer even though one of the veterinarian surgeons believed that Lara could be successfully bred in the 2017 season despite the failed 2016 season. *See* Decl. Tomlinson ¶ 4. Then, out of goodwill and without any obligation, Defendant on behalf of Soley generously refunded Plaintiff the £12,000 Plaintiff originally paid to breed Lara. Then, only after Plaintiff failed to pay Soley for the keep costs for the foal that was born, the foal was sold, the revenue was applied to Plaintiff's debt, and the remainder was given to Plaintiff. These facts overwhelmingly demonstrate that Defendant acted in good faith and had no intent to defraud Plaintiff.

Tellingly, when Plaintiff was asked what information she had that Defendant knew the promise to deliver two foals was false, Plaintiff said that she could not say and admitted that she did not know "what was in [Defendant's] head." Wood Decl. ¶ 4, Ex. 18, 231:19-232:3. Plaintiff has conceded that she has no information as to Defendant's intent. Accordingly, Plaintiff cannot raise a triable issue of material fact on the elements of Defendant's scienter and Defendant's intent to defraud. *See Hackenthal v. Nat'l Casualty Co.*, 189 Cal. App. 3d at 1110. The Court should grant summary judgment on the fraud claim on these bases alone.

**F.      Plaintiff's Alter Ego Allegations Fail As A Matter Of Law Because They Lack Any Factual Basis Whatsoever.**

"The alter ego doctrine is an extreme remedy, sparingly used, and sound public policy dictates that imposition of alter ego liability be approached with caution." *Cummings v. Worktap, Inc.*, Case No: C 17-6246 SBA, 2019 WL 4221652, at * 5 (N.D. Cal. Sept. 4, 2019) (citations omitted) (quotations omitted). As a result, there is a general presumption in favor of respecting the corporate entity. *Id.* "It is the plaintiff's burden to overcome the presumption of the separate existence of the corporate entity." *Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1212 (1992). To prevail on an alter-ego theory, a plaintiff must show that "(1) there is such a unity of interest that the separate personalities of the corporations no longer exist; and (2) inequitable results will follow if the corporate separateness is respected." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1285 (1994). Where defendants present evidence of the separate existence of the corporate entity on a motion for summary judgment, plaintiffs must then present sufficient evidence

Stoel Rives LLP
Attorneys At Law
Sacramento

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS                    -23-                    4:18-CV-07822-HSG

104733328.1 0069202-00001

1    to create a triable issue of fact. *See, e.g.*, *Long v. Nationwide Legal File & Serve, Inc.*, 2013 WL

2    5219053, at *7 (N.D. Cal. Sept. 17, 2013).

3         Here, Defendant has shown that Soley is a separate business entity with a limited liability

4    structure. In dealing with Plaintiff, Soley—not Defendant Phillips—invoiced Plaintiff, and Plaintiff

5    wired money to Soley's business account. Thus, the burden shifts to Plaintiff to present evidence

6    of a triable issue of material fact on this issue. But Plaintiff cannot do so. Plaintiff's First Amended

7    Complaint contains only boilerplate alter ego allegations, with no actual facts supporting the

8    allegations. Then, when asked in deposition whether she had any evidence to support her alter ego

9    allegations, Plaintiff could not answer and merely relied on her attorney to come up with something.

10   *See* Wood Decl. ¶ 4, Ex. 18, 245:15-247:1. But her counsel is not competent to testify or to

11   otherwise generate evidence in the absence of personal knowledge. *Clark v. County of Tulare*, 755

12   F. Supp. 2d 1075, 1084) (E.D. Cal. 2010). Any such attempt should be disregarded and admonished.

13   Because Plaintiff cannot present any evidence of an alter ego relationship between Soley and

14   Defendant, Plaintiff will not overcome the presumption of a separate existence between Soley and

15   Defendant. Accordingly, the Court should grant summary judgment, or in the alternative, summary

16   adjudication, in Defendant's favor on this issue.

17        **G.**    **Plaintiff's Third Claim Lacks Factual Support**

18        "In an action for constructive trust one must plead facts constituting the cause of action,

19   such as fraud, breach of fiduciary duty, etc.; and specifically identifiable property." *Ehret v.*

20   *Ichioka*, 247 Cal. App. 2d 637, 642 (1967). Under California Civil Code section 2224, "One who

21   gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful

22   act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing

23   gained, for the benefit of the person who would otherwise have had it." "Accordingly, California

24   courts have recognized three requirements for the imposition of a constructive trust: (1) the

25   existence of a res; (2) the plaintiff's right to that res; and (3) the defendant's acquisition of the res

26   by some wrongful conduct." *Condos v. Condos*, No. CV 04-07365 DT (SHx), 2006 WL 8431432,

27   at * 6 (C.D. Cal. Feb. 9, 2006).

28        Here, Plaintiff has not effectively pleaded the existence of an underlying cause of action

Stoel Rives LLP
Attorneys At Law
Sacramento

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS                    -24-                    4:18-CV-07822-HSG

104733328.1 0069202-00001

1   upon which her claim for imposition of a constructive trust can be imposed (*see* RJN ¶ 4, ¶¶ 21-

2   28). Thus, Plaintiff cannot obtain a constructive trust. Further, Plaintiff has not established the

3   second or third elements of a claim for a constructive trust—that Plaintiff has a right to the res (the

4   money) and that Defendant acquired the res through wrongful conduct. As demonstrated above, as

5   a matter of law, Plaintiff's claims for breach of contract and fraud fail. Accordingly, Plaintiff has

6   not shown a right to the res, that Defendant wrongfully obtained the res, and Plaintiff has no other

7   underlying claim upon which it can maintain its claim for a constructive trust. Thus, as a matter of

8   law, Plaintiff's claim for imposition of a constructive trust, and Defendant is entitled to summary

9   judgment on this matter.

10      In addition, Plaintiff's claim for imposition of a constructive trust is predicated upon alter

11   ego allegations. RJN ¶ 4, ¶¶ 24-27. As set forth in the preceding section, these alter ego allegations

12   are boilerplate and are contradicted by the available evidence. Moreover, Plaintiff herself conceded

13   that she knew of no evidence to support these allegations. Accordingly, Plaintiff is unable to raise

14   a disputed issue of material fact as to her claim for imposition of a constructive trust, and Plaintiff

15   is entitled to summary judgment or summary adjudication.

16   **V.**   **CONCLUSION**

17      For the foregoing reasons, and given that there are no disputed issues of material fact, the

18   Court should grant this motion for summary judgment as to Defendant Sandy Phillips.

19   Dated:  December 22, 2019                    /s/ Ryan C. Wood

20                                               Ryan C. Wood
                                                 Attorney for Defendant Sandy Phillips

21

22

23

24

25

26

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
SACRAMENTO

SANDY PHILLIPS' MOTION FOR
SUMMARY JUDGMENT; MPAS            -25-                    4:18-CV-07822-HSG

104733328.1 0069202-00001