UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRSTIN RIDGWAY,<br><br>    Plaintiff,<br><br>v.<br><br>SANDY PHILLIPS, et al.,<br><br>    Defendants. | Case No. 18-cv-07822-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 49 |

Pending before the Court is Defendant Sandy Phillips's motion for summary judgment. Dkt. No. 49. For the reasons discussed below, the Court **GRANTS IN PART AND DENIES IN PART** the motion.

## I. PROCEDURAL HISTORY

Plaintiff Kirstin Ridgway initially filed this action in Sonoma County Superior Court against Defendant Phillips, individually and "doing business as" Soley Performance Limited ("Soley"). *See generally* Dkt. No. 1-1. Defendant Phillips removed the action to this Court and filed a motion to dismiss for lack of personal jurisdiction and based on *form non conveniens.* Dkt. Nos. 1, 7. The Court denied Defendant's motion, but found that to the extent Plaintiff was attempting to join Soley as a separate defendant, Soley was not properly named as a defendant in this action. Dkt. No. 26. On May 13, 2019, after considering the parties' proposed schedule, the Court set a case schedule with a fact discovery deadline of October 28, 2019, expert discovery deadline of December 12, 2019, and dispositive motion filing deadline of December 22, 2019. Dkt. No. 31.

On July 8, 2019, Plaintiff filed the operative first amended complaint, this time purporting to name Soley as a separate defendant. *See generally* Dkt. No. 33 ("FAC"). Defendant Phillips

moved to dismiss Plaintiff's FAC and noticed the motion for a hearing on December 19, 2019. Dkt. No. 39. Although the hearing was noticed for a date after the discovery deadline, and only a few days before the dispositive motions filing deadline, the parties did not seek to expedite the motion to dismiss hearing or extend discovery and subsequent deadlines.

Defendant Phillips filed her motion for summary judgment on December 22, 2019. Dkt. No. 49. The Court held a hearing on the motion on January 30, 2020. Dkt. No. 54. Given the parties' case schedule, by the time Defendant filed her motion for summary judgment, Plaintiff presumably has had a full opportunity to conduct discovery on all her claims in the FAC (even claims the Court may have found to be deficient). In light of this, and because the parties raise similar arguments at the summary judgment stage, the Court denied Defendant's motions to dismiss and to strike. Dkt. Nos. 55, 56.

The Court now turns to the motion for summary judgment to determine whether there are genuine issues of material fact, even assuming *arguendo* (without deciding) that all of Plaintiff's claims were sufficiently pled.

## II. FACTUAL BACKGROUND

The Court briefly recounts the facts in the record, viewed in the light most favorable to Plaintiff, the nonmoving party, as it must at the summary judgment stage. *See Tolan v. Cotton*, 572 U.S. 650, 651 (2014); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Soley is a private limited liability company incorporated under the laws of England. Dkt. No. 49-3, Declaration of Sandy Phillips ("Phillips Decl.") ¶ 3; *id.*, Ex. 1.[1] Defendant Phillips is domiciled in the United Kingdom and is the sole shareholder of Soley. *Id.* ¶ 2. As a member of Soley, Defendant Phillips's liability is "limited to the amount, if any, unpaid on the shares held by [her]." Ex. 1 at PHILLIPS_000005 (Articles of Association of Soley). Soley is in the equine

---

[1] All numbered exhibits referenced are attached to the Phillips Declaration and Declaration of Ryan C. Wood, Dkt. No. 49-2 ("Wood Decl."), and all lettered exhibits referenced are attached to the Declaration of Kirstin Ridgway, Dkt. No. 51 ("Ridgway Decl.").

2

1  industry, and Defendant Phillips, as director of Soley, manages the company's business and
2  oversees the upkeep, training, and competition schedules of horses in Soley's care. Phillips Decl.
3  ¶ 4.
4  In April 2016, Defendant Phillips contacted Plaintiff and solicited her "to breed her
5  Olympic mare, Lara, and another mare named[ ] Riverdance, to produce two foals." Ridgway
6  Decl. ¶ 4. In April 2016, through a text message to Defendant Phillips, Plaintiff confirmed that
7  she desired to "go ahead with breeding Lara and Riverdance." *Id*. ¶ 5. Defendant Phillips then
8  emailed Plaintiff on May 16, 2016, stating that they needed "to get going on the breeding!!" Ex.
9  3. A little over a week later on May 27, 2016, Defendant Phillips followed up with Plaintiff to
10 confirm whether she still wanted to proceed with the breeding:

> Just confirming that you want to go ahead with the breeding of Lara and Riverdance.
> They can be inseminated here with my local vet and the embryo transfer is done by Beaufort Embryo Transfer who has done all my work over the years and knows the mares very well.
> You can pay Beaufort and the local vet directly.
> The summer keep for the mares is £12 per day, the winter keep is £22, and the timing of when they start winter keep depends on the weather.
> We try to keep them out as long as possible.
> The cost of the embryo for Lara is £12,000[.]
> The cost of the embryo for Riverdance is £8,000[.]
> Please confirm what stallions you want to use and we can organise it.
> For Lara, Sir Donnerhall and Fursten Look are very good[.]
> For Riverdance, she works really well with my stallion, Diamond Design, by Diamond Hit -- she makes very big babies so don't put her to anything too big!!

21 Ex. 4. Plaintiff responded on June 3, 2016 stating, "I'd like to move forward." Ex. 5. That same
22 day, Defendant Phillips emailed Plaintiff to inform her that they will "just need to know what
23 stallions" Plaintiff wanted for breeding with Lara and Riverdance. Ex. 6. Defendant Phillips also
24 clarified that Beaufort Embryo Transfer would email Plaintiff directly "with contracts" so Plaintiff
25 could pay it directly. *Id*. Once Defendant Phillips knew the selected stallions, Plaintiff could "pay
26 direct," and Defendant Phillips would have "my accountant [ ] send you details for the mares." *Id*.
27 Defendant Phillips's May 16, May 27, and June 3 emails were sent from a
28 "sandy@equiland.co.uk" email address. Exs. 3–5.

3

Martin Green, the "Book Keeper for Soley Performance Limited," emailed Plaintiff on June 8, 2016, telling her that "Sandy Phillips has asked me to send you the two attached invoices. One is for an embryo from Lara and the other is for an embryo from Riverdance." Ex. 7. The two attached invoices, invoice 1844 and 1845, are made out to "Kirstin Ridgway" and contain a header prominently displaying the name "SOLEY PERFORMANCE LIMITED." *Id*. The invoices also contain wiring instructions to Soley's bank accounts. *Id*.

On June 13, 2016, Plaintiff sent Defendant Phillips a text message confirming that she "[g]ot the email from Martin." Ex. 2 at 2-045. A few days later, Defendant Phillips then requested that Plaintiff "confirm when funds have been sent and whether in dollars or pounds." *Id*. Plaintiff responded with: "I need to crunch the numbers again. I don't know if I'm going to be able to swing it this year. … Next year would probably be better if that is a possibility." *Id*. at 2-046. However, on June 23, 2016, Plaintiff initiated the wire transfers, with her bank account listing "SOLEY PERFORMANCE LIMITED" as the recipient and payment for invoice 1844 and 1845. Ex. F. Plaintiff admits that she "received numerous invoices" from June 3, 2016 through February 2018, "some from Soley Performance Limited, some from Beaufort Embryo Transfer, and others, related to costs and fees for the breeding and upkeep of Defendant Sandy Phillips' two mares, Lara and Riverdance." Ridgway Decl. ¶ 10; *see also* Ex. G.

Lara was unable to produce an embryo, so in September 2016, Plaintiff agreed to "stop trying to breed Lara, and receive a refund of the deposit monies that [she] had paid in June 2016 to breed Lara, namely 12,000 British pounds." Ridgway Decl. ¶ 12; *see also* Phillips Decl. ¶ 23. Sadly, Lara was humanely euthanized in December 2016. Phillips Decl. ¶ 24. The other mare, Riverdance, became pregnant in 2016. *Id*. ¶ 27. In July 2017, Defendant Phillips texted Plaintiff the news that Riverdance delivered her foal. *Id*. ¶ 28. The parties began disputing the terms of payment, and eventually Defendant Phillips sold the colt. *Id*. ¶¶ 39–48; Ridgway Decl. ¶¶ 11–13.

Plaintiff's FAC alleges that Defendants allegedly breached the contract by selling the offspring of Riverdance to another buyer, "even though Plaintiff had already paid Defendant more than $57,524.00 for the ownership of said foal." FAC ¶ 12. Plaintiff also brings a fraud claim and a claim seeking "imposition of constructive trust for unjust enrichment / alter ego / piercing the

4

corporate veil and an accounting." *Id*. ¶¶ 14–28. She seeks compensatory damages in the amount of $57,524.52, punitive damages, prejudgment interest, and costs. FAC at 7.

## III. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. And a dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* But in deciding if a dispute is genuine, the court must view the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). If a court finds that there is no genuine dispute of material fact as to only a single claim or defense or as to part of a claim or defense, it may enter partial summary judgment. Fed. R. Civ. P. 56(a).

With respect to summary judgment procedure, the moving party always bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if

5

the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment," because the duty of the courts is not to "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts must enter summary judgment in favor of the movant. *Celotex*, 477 U.S. at 323.

## IV. DISCUSSION

### A. Defendant Soley

As an initial matter, there is no evidence that Plaintiff ever served Soley in compliance with Federal Rule of Civil Procedure 4.[2] Federal Rules of Civil Procedure 4(f)(1) and 4(h)(2) govern service of process on a foreign corporation, partnership, or association. Fed. R. Civ. P. 4(f), 4(h)(2). Under Rule 4(f)(1), service on a foreign corporation may be made "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." *See* Fed. R. Civ. P. 4(f)(1).

Rule 4(m)'s requirement that a complaint be served within 90 days after filing does not apply to service in a foreign country. *Lucas v. Natoli*, 936 F.2d 432, 432–33 (9th Cir. 1991); *see also* Fed. R. Civ. P. 4(m). However, a court may impose a reasonable time limit for service upon a foreign defendant when complying with the Hague Convention. *Zehavi v. Reef*, No. 18-CV-06394-EJD, 2019 WL 917423, at *2 (N.D. Cal. Feb. 25, 2019) (citations omitted). Here, Plaintiff

---

[2] Plaintiff filed a "Certificate of Service," stating that counsel "transmitted the Plaintiff's First Amended Complaint … using the CM/ECF System … to the CM/ECF registrants on record." Dkt. No. 34. But the Court's CM/ECF system is not a substitute for service of the initial complaint and summons. Civ. L.R. 5-1(d) ("Upon the filing of a complaint or other case-initiating document, whether manually or electronically, the plaintiff shall *manually serve* upon the defendant along with the complaint, the ECF Registration Information Handout …." (emphasis added)).

6

has had over eight months to complete service on Soley. At the January 30, 2020 hearing, Plaintiff's counsel explained that he had not served Soley because of the complexities and expense of serving a foreign corporation. But Plaintiff knew Soley's status as a foreign entity when she named Soley as a Defendant in her FAC. And although Plaintiff's counsel represented that he has attempted to serve Soley, there is no evidence in the record that Plaintiff is in the process of complying with Hague Convention requirements. Nor did Plaintiff ever seek an extension to serve Soley, request alternative service, or respond to defense counsel's proposals concerning service. *See* Dkt. No. 49-2, Declaration of Ryan C. Wood ("Wood Decl."), Ex. 16. At this point, multiple rounds of motions to dismiss have been briefed and decided, discovery is complete, and the parties have fully briefed a motion for summary judgment. Given the current stage of litigation and Plaintiff's lack of effort to comply with Rule 4, the Court **DISMISSES** Soley from this action without prejudice.

### B. Alter Ego Liability

Defendant Phillips is the sole member and shareholder of Soley. Ex. 3. Under California law, a member of a limited liability company is not personally liable for debts, legal liability, or obligations unless liability attaches under an alter ego theory. Cal. Corp. Code § 17703.04. A claim against a defendant based on the alter ego theory "is not itself a claim for substantive relief," but rather, a procedural claim to hold the "alter egos liable on the obligations of the corporation." *Hennessey's Tavern, Inc. v. Am. Air Filter Co.*, 204 Cal. App. 3d 1351, 1359 (Ct. App. 1988). "The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests." *Mesler v. Bragg Mgmt. Co.*, 39 Cal. 3d 290, 300. Under the doctrine, "[a] corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the [owner] of a corporation liable for the actions of the corporation." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000) (citation omitted).

"There is a strong presumption against disregarding corporate identities and finding a person to be the alter ego of a corporation." *Tarel Seven Design, Inc. v. Magni Grp., Inc.*, No. SA CV 89–210 AHS (RWRX), 1990 WL 118290, at *4 (C.D. Cal. May 30, 1990) (citing *In re*

*Christian & Porter Aluminum Co.*, 584 F.2d 326, 338 (9th Cir. 1978)). To overcome this presumption, a plaintiff 'must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Ranza v. Nike Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (citation and quotations omitted and alterations in original). The party asserting alter ego liability bears the burden of establishing it. *See UA Local 343 v. Nor–Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994).

To assess whether there is unity of interest between a corporation and an individual for the purposes of piercing the corporate veil under alter ego liability, courts consider many factors, including:

> [T]he commingling of funds and other assets; the failure to segregate funds of the individual and the corporation; the unauthorized diversion of corporate funds to other than corporate purposes; the treatment by an individual of corporate assets as his own; the failure to seek authority to issue stock or issue stock under existing authorization; the representation by an individual that he is personally liable for corporate debts; the failure to maintain adequate corporate minutes or records; the intermingling of the individual and corporate records; the ownership of all the stock by a single individual or family; the domination or control of the corporation by the stockholders; the use of a single address for the individual and the corporation; the inadequacy of the corporation's capitalization; the use of the corporation as a mere conduit for an individual's business; the concealment of the ownership of the corporation; the disregard of formalities and the failure to maintain arm's-length transactions with the corporation; and the attempts to segregate liabilities to the corporation.

*Digby Adler Grp. LLC v. Image Rent a Car, Inc.*, 79 F. Supp. 3d 1095, 1106–07 (N.D. Cal. Feb. 6, 2015) (citing *Mid-Century Ins. Co. v. Gardner*, 9. Cal. App. 4th 1205, 1213 n.3 (1992)).

Defendant Phillips argues that she has presented evidence that Soley is a separate business entity with a limited liability structure, and that Plaintiff has failed to produce any evidence of an alter ego relationship between the two. Dkt. No. 49 at 24. The Court agrees, and finds that even viewing the evidence in the light most favorable to Plaintiff, she has failed to make out a prima facie case of alter ego liability.

Plaintiff appears to proffer the following evidence to support her alter ego theory: (1) she received an email from "sandy@equiland.co.uk," which she alleges is Defendant Phillips's

8

United States District Court
Northern District of California

personal email account, Dkt. No. 50 at 2, *see also* Ex. B; and (2) Defendant Phillips never "mention[ed] anything about her company," Dkt. No. 50 at 2. This proffered evidence falls well short of creating a triable issue of fact as to the first prong of the alter ego test, which requires a showing of a unity of interest and ownership such that Soley and Defendant Phillips no longer exist as separate entities. That Defendant Phillips may not have mentioned anything about Soley, or that Defendant Phillips sent an email from an "equiland.co.uk" email account, is insufficient to prove any of the multiple factors courts consider when analyzing alter ego liability, including ones Plaintiff alleges in her FAC. *See* FAC ¶ 6; *see also Digby*, 79 F. Supp. 3d at 1106–07 (listing factors such as such "commingling of funds and other assets," "the failure to segregate funds," "the unauthorized diversion of corporate funds to other than corporate purposes," and "the representation by an individual that [s]he is personally liable for corporate debts"). There is no evidence that Defendants Phillips commingled funds and assets or that Soley was underfunded and inadequately capitalized. In fact, Defendant Phillips produced evidence establishing that Soley's bookkeeper sent Plaintiff invoices from Soley with only Soley's bank account information. Ex. 7. And Plaintiff's bank transactions verify that outgoing wire transfers were made to "SOLEY PERFORMANCED LIMITED," not to an account associated with Defendant Phillips individually. Ex. F. Plaintiff herself admitted to having no knowledge as to whether Defendant Phillips maintained a single bank account for her business and for her personal use. Ex. 17 at 246:9–15.[3] Further, Plaintiff does not produce any evidence suggesting that an injustice or fraud would result if Defendant Phillips was not considered the same entity as Soley.[4]

Accordingly, even assuming *arguendo* that Plaintiff's alter ego theory was sufficiently pled (which the Court does not decide), there is no triable issue of fact as to whether Soley is an alter ego of Defendant Phillips. The Court **GRANTS** Defendant's motion for summary judgment

---

[3] Although Defendant's motion cites to Plaintiff's deposition transcript as "Exhibit 18," there is no Exhibit 18 attached.

[4] The Court notes that Plaintiff's only allegation of inequity is an inability to collect judgment against Defendant Phillips. *See* FAC ¶ 6. But California courts have rejected "'the view that the potential difficulty a plaintiff faces collecting a judgment is an inequitable result that warrants application of the alter ego doctrine.'" *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1041 (N.D. Cal. 2014) (citations omitted).

1    with respect to alter ego liability.

## C. Breach of Contract

Plaintiff also argues that there is a genuine dispute of material fact as to whether she contracted with Defendant Phillips "individually or with her solely owned company, Sole[y]." Dkt. No. 50 at 7. The Court thus addresses whether there is a genuine dispute of material fact regarding with whom the contract was made. Put another way, the Court determines whether Soley was an undisclosed principal when Defendant Phillips executed the contract with Plaintiff.

It is well-settled under California law that "'only a signatory to a contract may be liable for any breach.'" *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002) (quoting *Clemens v. American Warranty Corp.,* 193 Cal. App. 3d 444, 452 (1987)); *see also Money Matters Mgmt. v. Niche Mktg., Inc*., No. 07-CV-0591IEGCAB, 2007 WL 3052996, at *3 (S.D. Cal. Oct. 19, 2007). A plaintiff cannot proceed against a director or officer who signs a contract on behalf of a company, unless they "contract with a third person who is ignorant of the existence of the corporation and to whom no disclosure of the existence of the corporation is made." *Carlesimo v. Schwebel*, 87 Cal. App. 2d 482, 486 (1948); *see also Money Matters*, 2007 WL 3052996, at *3 (S.D. Cal. Oct. 19, 2007) ("But there is no basis in California law for proceeding against an agent signing *on behalf of* a corporation." (collecting cases)). To excuse the agent from responsibility, the agent must show that she disclosed the principal "at the time of making the contract, and that [the agent] acted on [the principal's behalf], so as to enable the party with whom [the agent] deals to have recourse to the principal in case the agent had authority to bind [the principal]." *J & J Builders Supply v. Caffin*, 248 Cal. App. 2d 292, 295 (1967) (citation and quotation omitted); *see also Starnet Int'l AMC Inc. v. Kafash*, No. 09-CV-04301-LHK, 2011 WL 845908, at *11 (N.D. Cal. Mar. 8, 2011). But the agent does not need to prove that the party knew the identity of the principal, as it is sufficient to prove that the party should have known. *Carlesimo*, 87 Al. Capp. 2d at 486. "[T]he mere self-serving statement of the third party that [s]he did not know of the existence of the corporation is not binding on the trier of the facts." *Id*.

Although the Court finds it difficult to believe that Plaintiff did not know about the existence of Soley given the numerous invoices from Soley to Plaintiff and Plaintiff's transfer of

10

funds to Soley, *see* Exs. 7–8, Ex. F, the critical question here is whether Plaintiff should have known about Soley at the time the contract was executed. *See J & J*, 248 Cal. App. 2d at 295. The parties do not dispute that the material terms of the agreement were set forth and confirmed in an email from Defendant Phillips to Plaintiff on May 27, 2016. Ridgway Decl. ¶ 7; Phillips Decl. ¶ 4. In that email, Defendant Phillips lists the costs for summer and winter keep and the down payment of the embryos for Lara and Riverdance. Ex. 4. But the email does not indicate that Defendant Phillips is an agent of, or even associated with, Soley. The email contains no mention of Soley at all and is sent from a domain that does not appear to be associated with Soley. *Compare id.* (email from "sandy@equiland.co.uk") *with* Ex. 7 (invoices from Soley listing email as "sp@soleyperformance.co.uk"). Plaintiff responded to Defendant Phillips on June 3, 2016, confirming that she would "like to move forward." Ex. 5. There is no evidence demonstrating that Plaintiff should have known at that point that Defendant Phillips was acting on behalf of Soley.

To avoid this conclusion, Defendant Phillips argues that "[p]rior to commencing any work, Defendant made it clear to Plaintiff that payment was mandatory on the first two invoices." Dkt. No. 49 at 18; *see also* Dkt. No. 52 at 2 ("The terms of the agreement … make it clear that in order for Plaintiff to receive the benefit of breeding … she had to pay an embryo fee for the right to breed …"). In other words, as defense counsel asserted during oral argument, payment of the embryo fees was a "condition precedent," meaning there was no contract formed until Plaintiff remitted payment on June 23, 2016. By then, Plaintiff undoubtedly knew she was contracting with Soley, in light of the undisputed fact that she received invoices from and remitted payment to Soley. Defendant argues that this theory is bolstered by the fact that prior to payment, Plaintiff voiced concerns on June 16, 2016, as to whether she would be able to pay the fees this year, and stated that "[n]ext year would probably be better if that is a possibility." Ex. 2 at 2-046. Though not articulated in the brief, defense counsel argues that Plaintiff's June 16 text message proves that she herself did not believe she had entered into a contract yet.

While the Court acknowledges Defendant's argument, making all reasonable inferences in Plaintiff's favor as it must at this stage, the Court finds that there is at least a dispute of material

11

fact as to, for example, whether Plaintiff's June 3 email stating "I'd like to move forward" was acceptance of the material terms in the May 27, 2016 email. A reasonable fact finder could conclude that this statement was an "outward manifestation of consent" which would lead a "reasonable person to believe" that there was the existence of mutual assent, thus forming a contract at that point. *Chaganti v. I2 Phone Int'l, Inc.*, 635 F. Supp. 2d 1065, 1071 (N.D. Cal. 2007) (quoting *Meyer v. Benko*, 55 Cal. App. 3d 937, 942–43 (1976)), *aff'd*, 313 F. App'x 54 (9th Cir. 2009). Because the evidence here establishes that there is no mention of the name "Soley" in any of the text messages or emails between Plaintiff and Defendant Phillips prior to Mr. Green's email on June 8, 2016, the Court finds there is a triable issue as to whether Plaintiff was aware that Defendant Phillips was acting as an agent for Soley when the contract was executed. *See* Exs. 2–6; *see also Carlesimo*, 87 Cal. App. 2d at 486 (1948) (inquiry is whether the plaintiff had knowledge "of the existence of the [principal] prior to and at the time the contract was executed"). Defendant Phillips fails to satisfy her burden of proving that she disclosed the identity of Soley when she made the contract with Plaintiff. *See J & J*, 248 Cal. App. 2d at 295. Accordingly, the Court finds that there is, at a minimum, a genuine dispute of material fact as to when the contract was formed and whether Plaintiff knew, or should have known, that she was entering into an agreement with Soley at the time she made the contract, and **DENIES** Defendant's motion for summary judgment as to this claim.[5]

### D. Fraud Claim

Plaintiff's second cause of action alleges fraud. According to Plaintiff, Defendant Phillips allegedly made misrepresentations when she told Plaintiff that she would receive two foals from Riverdance and Lara with a "Live Foal Guarantee." FAC ¶ 15. But Defendant Phillips purportedly had no intention "of sending any offspring of Riverdance or Lara to Plaintiff," and also concealed the fact that Lara was "incapable of conceiving a foal due to her age and prior poor health history which was known to Defendant[] at the inception of the subject agreement." *Id.* ¶

---

[5] Defendant also argues that there is no dispute of fact regarding Plaintiff's non-performance. Dkt. No. 49 at 19–20. Having found at least one genuine dispute of material fact, the Court need not reach this argument. And in any event, the parties' arguments simply highlight a factual dispute as to whether Plaintiff was obligated to pay for certain costs under the agreement.

12

17.

Under California law, fraud is actionable where there is: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage. *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). However, the economic loss rule requires recovering "in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004). In other words, "'no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement." *WeBoost Media S.R.L. v. LookSmart Ltd.*, No. C 13-5304 SC, 2014 WL 824297, at *4 (N.D. Cal. Feb. 28, 2014) (citation omitted). "The rule serves to prevent every breach of contract from giving rise to tort liability and the threat of punitive damages." *Id*. "Quite simply, the economic loss rule 'prevent[s] the law of contract and the law of tort from dissolving one into the other.'" *Robinson*, 34 Cal. 4th at 988 (citation omitted and alteration in original). Tort damages may be allowable "where the contract was fraudulently induced," because "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm." *Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999).

*First*, the Court finds that Plaintiff's fraud claim is barred by the economic loss doctrine, an argument Defendant Phillips raised in her motion to dismiss. *See* Dkt. No. 39 at 15–16. Plaintiff's fraud claim rests on purported misrepresentations that are the alleged terms of the contract and not conduct independent of the agreement. *Compare* FAC ¶¶ 15 (alleged misrepresentations that "Plaintiff would receive two foals" and would receive a "'Live Foal Guarantee'") *with id*. ¶ 10 (alleged terms of contract that "Plaintiff was to receive two foals immediately" and Defendant gave Plaintiff a "'Live Foal Guarantee.'"). Plaintiff attempted to sidestep this result in her opposition by claiming that she was alleging a fraudulent inducement claim. *See* Dkt. No. 43 at 9–10. But Plaintiff did not plead a fraudulent inducement claim in her FAC, so normally the Court would not consider these allegations. *Schneider v. California Dep't*

13

*of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition").

*Second*, even assuming *arguendo* that Plaintiff's fraudulent inducement claim had been timely and sufficiently pled (which the Court does not decide), Plaintiff does not present any evidence establishing that Defendant Phillips had knowledge of the alleged falsity of any statements or that she had an intent to defraud Plaintiff. *See Lazar*, 12 Cal. 4th at 638. She admitted as much during her deposition:

> Q: [ ] What knowledge do you have that Ms. Phillips would have made the promise to you that she was going to deliver these two foals but knowing at the time she made that promise that it wasn't true? Do you have any knowledge of that?
> A: I can't say. I don't know what was in her head. But the reality is that I was buying two foals -- or two embryos with live foal guarantees, and I have no horse, not one. So not only was I not delivered two, I wasn't even delivered one.

Ex. 17 at 231:19–232:3. The fact that Plaintiff did not obtain her desired outcome does not create a genuine dispute as to whether Defendant Phillips intended to defraud her.

As to Plaintiff's allegation that Defendant Phillips concealed the fact that Lara was incapable of producing offspring, Defendant Phillips produces substantial evidence demonstrating that Lara had a good breeding history, *see* Dkt. No. 49-4 at ¶ 4, Dkt. No. 49-5 at ¶ 3, Dkt. No. 49-6 at ¶ 3, and Lara was inseminated three separate times in an attempt to provide Plaintiff with an embryo, Dkt. No. 49-6 at ¶ 3. Plaintiff herself declined to try to breed Lara again in 2017. Ridgway Decl. ¶ 12. There is no evidence that Defendant Phillips knew Lara would not be able to produce an embryo when Plaintiff entered into the contract.

The Court also notes that Plaintiff fails to even address her fraud claim in her opposition to Defendant's motion for summary judgment. Instead, she merely states that there are multiple issues of facts, "namely … [w]as Defendant in breach of contract or fraudulent when she sold the foal to another buyer?" Dkt. No. 50 at 7. The Court may infer from Plaintiff's failure to address the fraud claim that she has abandoned it. *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1026 (9th Cir. 2009); *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (upholding

14

finding that the plaintiff "abandoned her other two claims by not raising them in opposition to the motion for summary judgment").

The Court finds that Plaintiff has presented no evidence to support her fraud claim and **GRANTS** Defendant's motion for summary judgment with respect to that claim.[6]

### E. Constructive Trust and Accounting

Plaintiff's third cause of action purportedly brings a claim for "Imposition of Constructive Trust for Unjust Enrichment / Alter Ego / Piercing the Corporate Veil and an Accounting." FAC ¶¶ 21–28. Under this claim, Plaintiff alleges that the "assets of the alter ego entity Defendants should be held in constructive trust for the benefit of Plaintiff," and "defendant should be ordered to render an account for all monies paid to them." *Id*. ¶¶ 27–28.

As discussed, alter ego liability is not itself a basis for substantive relief. *See Hennessey's Tavern*, 204 Cal. App. 3d at 1359. Because there is insufficient evidence to sustain Plaintiff's alter ego allegations, Plaintiff's claim for imposition of a constructive trust fails.[7]

Nor can the Court decipher what Plaintiff believes she is entitled to under an accounting claim. An accounting is generally a remedy in equity. *Periguerra v. Meridas Capital, Inc.*, No. C 09-4748 SBA, 2010 WL 395932, at *4 (N.D. Cal. Feb. 1, 2010) (citing *Batt v. City & County of San Francisco*, 155 Cal. App. 4th 65, 82 (2007)). A plaintiff may bring an accounting claim as a standalone cause of action when a defendant owes a fiduciary duty to a plaintiff which requires an accounting, and a balance is due that can only be ascertained by an accounting. *Id*. (citation omitted). But this type of accounting claim is dependent upon a substantive basis for liability, meaning that it has no separate viability if plaintiff's other causes of action fail. *Id*. (citation omitted). In addition, an action for accounting "'is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation.'" *Lester v. J.P. Morgan Chase Bank*, 926 F. Supp. 2d 1081, 1098–99 (N.D. Cal. 2013) (citation omitted). Plaintiff provides no evidence of a fiduciary relationship between her and Defendant Phillips.

---

[6] Because summary judgment has been granted as to this claim, Plaintiff's punitive damages claim is also dismissed. *See* FAC at p.7.
[7] The Court does not construe Plaintiff's third cause of action to allege an unjust enrichment claim, as there is no unjust enrichment theory articulated in the FAC.

15

And critically, Plaintiff alleges a right to recover a sum certain, specifically $57,524.24, *see* FAC at 7, therefore barring her accounting claim.

In any event, Plaintiff also fails to address her third cause of action in her opposition to Defendant's motion for summary judgment, which the Court construes as a concession that summary judgment should be granted as to this claim.

## V. CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion for summary judgment, Dkt. No. 49. Unless they reach a final settlement agreement (not a settlement in principle) as to what remains of this case, the parties must be prepared to proceed to trial as scheduled on May 18, 2020 (and to meet all pretrial deadlines, which remain in effect).

**IT IS SO ORDERED.**

Dated: 3/18/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge